ROOSEVELT UNIVERSITY, Plaintiff-Appellant, *v.* MAYFAIR CONSTRUCTION COMPANY, Defendant-Appellee.

(No. 58300;

First District (2nd Division)—April 22, 1975.

*Supplemental opinion upon denial of rehearing June 24, 1975.*

Robert J. Gorman and Morgan, Lanoff, Cook & Madigan, both of Chicago (Robert J. Gorman and Samuel M. Lanoff, of counsel), for appellant.

Don H. Reuben, Lawrence Gunnells, and Howard P. Kamin, all of Chicago (Kirkland & Ellis, and Lawrence, Lawrence, Kamin & Saunders, of counsel), for appellee.

Mr. JUSTICE HAYES delivered the opinion of the court:

This case concerns the arbitrability of several controversies which have arisen between the parties to a construction contract. Roosevelt University (plaintiff-appellant and hereafter "Roosevelt") appeals from an order of the Circuit Court of Cook County denying its motion under section 2(b) of the Uniform Arbitration Act (Ill. Rev. Stat. 1971, ch. 10, par. 102(b)) to stay arbitration, and dismissing its complaint for a declaratory judgment that none of the controversies in question was arbitrable. For a better understanding of the issues presented, a somewhat detailed description of the transaction is necessary.

On 15 August 1968, Roosevelt and Mayfair Construction Company, Inc. (defendant-appellee and hereafter "Mayfair") entered into a contract for the construction by Mayfair of a 17-story student dormitory building at 425 South Wabash Avenue in Chicago. The contract was awarded to Mayfair on the basis of a bid submitted by Mayfair on 30 July 1968; the bid in turn had been made on the basis of certain contract documents which had been submitted to Mayfair by Roosevelt through its architect. The original contract price was $4,788,300. Duly approved

change orders raised the contract price to $4,908,187.53. Of that sum, about $4,600,000 has been paid. The final payment of approximately $308,000 has been withheld for reasons which will be related shortly.

The agreement between the parties consisted of several documents, collectively referred to as "Contract Documents." These documents, listed in the order of priority to which reference is made in paragraph IV of the Contract (quoted in our next sentence), are: the Contract, General Conditions, Supplementary General Conditions, Engineer's Special Conditions, Specifications, Bulletins # 1-4, Addenda # 1-9, Drawings, Contractor's Bid, and Performance-Payment Bond. Paragraph IV of the Contract provides:

> "In the event of any conflict between this agreement and any of the other Contract Documents, the provisions of this instrument (Contract) shall control. The order of precedence of the other Contract Documents in the event of conflict shall be in the same order as listed above. A contract document first listed shall have precedence over a contract document following it, except as may be otherwise specifically provided in the General Conditions or the Supplementary General Conditions."

In addition, paragraph 41 of the General Conditions provides as follows:

> "Any provisions in any of the Contract Documents which may be in conflict or inconsistent with any of the paragraphs in these General Conditions shall be void to the extent of such conflict or inconsistency."

Under the provisions of the Contract, the work was to be completed by 15 August 1970. The Contract recites that the 2-year construction period thus provided was agreed by the parties to be a reasonable period of time for the completion of the work and that time was of the essence. The Contract also provided for liquidated damages in specified amounts to be paid by Mayfair to Roosevelt, should the construction as a whole or as to certain stages not have been completed by 15 August 1970. Other provisions of the Contract Documents are hereinafter set forth as necessary.

Roosevelt employed the architectural firm of Mittelbusher and Turtelot (hereafter the "Architect") to design the building, to draw the plans and specifications, and to supervise the construction work.

On 20 March 1970, Mayfair orally advised Roosevelt that the work would not be completed until December, 1970. Five days later, Roosevelt, by letter, advised Mayfair that the delay would cause Roosevelt hardship and financial loss, since it had previously entered into contracts with students for housing for the academic year beginning in September of 1970. Roosevelt also claimed that the inability to house students would

adversely affect its enrollment. Roosevelt and the Architect subsequently denied most of Mayfair's requests for additional time in which to complete the construction without incurring liability for liquidated damages.

The work in fact was not completed until about December, 1970, at which time the Architect compiled a "punch list" of specific items in the construction work which were then defective or still uncompleted. Later, the Architect compiled a consolidated "punch list," by reason of which the Architect determined that Roosevelt was entitled to damages of $146,700 against Mayfair. This list was subsequently amended so that the "punch list" damage claim amounts to approximately $170,000.

Roosevelt also determined that Mayfair was liable for liquidated damages of $189,660 owing to its late completion of the work. Since Roosevelt felt that Mayfair's liability for the consolidated amended "punch list" items and the liquidated damages was in excess of the final installment due under the contract, Roosevelt withheld its final payment of approximately $308,000 despite Mayfair's demand. Mayfair disputed both of Roosevelt's claims.

After lengthy negotiations, on 6 April 1972, Mayfair, in addition to renewing its demand for the final payment under the contract, presented Roosevelt with claims for general damages of $243,168.82 for extra costs incurred by Mayfair owing to delays and work schedule disruptions caused by Roosevelt, for extras in the amount of $159,537.70, and for open change orders in the amount of $22,225.12.

Roosevelt denied that it was in any way liable to Mayfair, whereupon on 1 May 1972, Mayfair filed its Demand for Arbitration with the American Arbitration Association relative to the following matters:

1. Roosevelt's claim for damages based upon the Architect's consolidated amended "punch list";
2. Roosevelt's claim for liquidated damages;
3. Mayfair's claim for damages arising from a breach of the contract by Roosevelt-caused delays in construction;
4. Mayfair's claim or open change orders;
5. Mayfair's claim for extras;
6. Mayfair's claim for the final contract payment with interest from the date that it became due.

Mayfair's demand for arbitration was based upon its position that each of the claims set forth above was arbitrable under the following clauses appearing in the Supplementary General Conditions:

"65. *Arbitration:*[1]

---

[1] Supplementary General Condition 65 is in substance identical to the American Institute of Architects Document A201, General Conditions (12th ed. 1970), paragraph 7.10.1.

All claims, disputes and other matters in question arising out of, or relating to this Contract or the breach thereof, except as set forth with respect to the Architect's decisions on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of final payment as otherwise provided, shall be decided by arbitration in accordance with the Construction Industry Arbitration Association then obtainint [sic] unless the parties mutually agree otherwise. This agreement so to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

12. *Administration of the Contract:*[2]

The Architect will provide general administration of the Contract, including performance of the functions hereinafter described.

\* \* \*

The Architect will be, in the first instance the interpreter of the requirements of the Contract Documents and the judge of the performance thereunder by both the Owner and Contractor. The Architect will, within a reasonable time, render such interpretations as he may deem necessary for the proper execution or progress of the Work. Claims, disputes and other matters in question between the Contractor and the Owner relating to the execution or progress of the Work or the interpretation of the Contract Documents shall be referred initially to the Architect for a decision which he will render in writing within a reasonable time. All interpretations and decisions of the Architect shall be consistent with the intent of the Contract Documents. In his capacity as interpreter and judge, he will exercise his best efforts to insure faithful performance by both the Owner and the Contractor and will not show partiality to either. The Architect's decisions in matters relating to artistic effect will be final if consistent with the intent of the Contract Documents. Any claim, dispute or other matter that has been referred to the Architect, except those relating to artistic effect and except any which have been waived by the making or acceptance of final payment, shall be subject to arbitration upon the written demand of either party. \* \* \*

\* \* \*

If a decision of the Architect is made in writing and states that it is final but subject to appeal, no demand for arbitration of a

---

[2] Supplementary General Condition 12 is in substance identical to Document A201, paragraphs 2.2.1 *et seq.*

claim, dispute or other matter covered by such decision may be made later than thirty days after the date on which the party making the demand received the decision. The failure to demand arbitration within said thirty days' period will result in the Architect's decision becoming final and binding upon the Owner and the Contractor. * * *

* * *"

For various reasons (as indicated hereafter), Roosevelt took the position that none of the matters in controversy was arbitrable. Pursuant to that position, Roosevelt filed the instant suit. Mayfair moved to dismiss the action on the ground that the parties had agreed to arbitrate all issues except matters waived by the making or acceptance of final payment and matters relating to the Architect's decisions as to artistic effect; and even as to the latter exception, Mayfair contended that the interpretation of the term "artistic effect" was also subject to arbitration.

At the hearing on Mayfair's motion to dismiss Roosevelt's action, argument apparently focused principally on the arbitrability of Mayfair's claim for general damages by reason of Roosevelt-caused delay. When that issue had been plenarily argued, the trial court inquired whether Roosevelt regarded that issue as its strongest for its position of non-arbitrability. When Roosevelt replied in the affirmative, the trial court, on 10 November 1972 granted Mayfair's motion, dismissed the suit, and directed the parties to proceed to arbitration. Roosevelt appealed.

After filing its appeal, Roosevelt moved in this court for a stay of the arbitration proceedings pending the disposition of its appeal. The motion was denied. Roosevelt then filed its answer in the arbitration proceedings, denying, *inter alia*, the arbitrability of any of the claims set forth in Mayfair's demand. Thereafter, Roosevelt requested that the arbitrator make a prehearing determination of the arbitrability of each of the issues. The arbitrator denied that request, whereupon Roosevelt renewed its motion in this court for a stay of arbitration pending the disposition of the appeal. On 13 March 1973, this court entered an order staying arbitration pending its disposition. However, prior to this court's order staying arbitration, the arbitrators had already ruled that all of the claims set forth in Mayfair's demands were arbitrable.

OPINION

We think it may be helpful initially to review certain Illinois decisions relating to the *judicial* determination of the issue of the arbitrability of matters alleged to be arbitrable under arbitration provisions of construction and other contracts. In such review, three distinctions must be borne in mind: (1) the distinction between a judicial determination sought

under section 2 of the Uniform Arbitration Act (Ill. Rev. Stat. 1971, ch. 10, par. 102) and one sought under section 12 of that Act (Ill. Rev. Stat. 1971, ch. 10, par. 112), either with or without a prior judicial determination under section 2; (2) the distinction between an arbitration provision (in the contract) which purports to be specific in designating arbitrable issues and one which purports to be generic in that respect, and, if generic, how generic; (3) the distinction between a generic arbitration provision in a contract and any other promissory undertaking in the contract by a party thereto.

With respect to the first distinction: Section 12(a)(5) makes it clear that, if a *judicial* determination of arbitrability or non-arbitrability of a given matter has been made in a prior section 2 proceeding, that issue may not be relitigated in a subsequent section 12 proceeding. However, it is possible in a section 2 proceeding for the court under certain circumstances to decline, in that proceeding itself, to decide the issue of arbitrability or nonarbitrability and to refer that issue to the arbitrator for decision in the first instance subject to ultimate *judicial* determination at the instance of either party in a subsequent section 12 proceeding. The usual formulation of the distinction is as follows: (1) If the matter sought to be arbitrated is clearly within the scope of the arbitration provision in the contract, and if the parties present the issue of arbitrability in a section 2 proceeding, then the court in such proceeding should find the matter arbitrable; (2) If the matter sought to be arbitrated is clearly not within the scope of the arbitration provision in the contract and if the parties present the issue of arbitrability in a section 2 proceeding, then the court should find the matter not arbitrable; (3) If the parties present the issue of the arbitrability of a given matter in a section 2 proceeding and it appears to the court that a reasonable doubt exists as to whether the matter is or is not within the scope of the arbitration provision in the contract, then the court should refer the issue of arbitrability to the arbitrator for initial decision, subject to ultimate *judicial* determination at the instance of either party in a section 12 proceeding; this disposition of the issue in a section 2 proceeding enables the court in the subsequent section 12 proceeding to utilize the arbitrator's expertise in the court's ultimate *judicial* determination of the issue. *Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc.* (1974), 21 Md. App. 307, 320 A.2d 558.

We think the decision in *School District No. 46 v. Del Bianco* (1966), 68 Ill.App.2d 145, 215 N.E.2d 25, adopts this distinction fully, and to that extent is in full accord with the decision in *Layne-Minnesota Co. v. Regents of the University of Minnesota* (1963), 266 Minn. 284, 123 N.W.2d 371, and with the views expressed by Maynard E. Pirsig in

*Arbitrability Under the Uniform Act,* 19 The Business Lawyer 763 (1964). (See also Kalevitch, *Arbitrability: The Uniform Arbitration Act in Illinois,* 4 Loyola U. (Chicago) L.J. 23 (1973).) We are aware that one paragraph of the opinion in *Paschen Contractors, Inc. v. John J. Calnan Co.* (1973), 13 Ill.App.3d 485, 300 N.E.2d 795, might appear to reject the third "reasonable doubt" alternative presented in *Del Bianco* in that section 2 proceeding.[3] We think, however, that a careful reading of that opinion demonstrates that it does not do so, especially in light of the fact that, in *Paschen,* both parties agreed that the court "should decide the case [*i.e.,* the issue of arbitrability] on its merits * * *." 13 Ill.App.3d 485, 486.

With respect to the second distinction between specific and generic arbitration provisions: the decision of our supreme court in *Flood v. Country Mutual Insurance Co.* (1968), 41 Ill.2d 91, 242 N.E.2d 149, is an example of an arbitration provision which specifically designates two, and only two, arbitrable issues in a case in which the issue sought to be arbitrated was a third and threshold issue which was different from either of the two specified arbitrable issues. *Flood,* therefore, does not present the problems involved in a generically worded arbitration provision, such as obtains in the instant case; and the observation in *Flood* that parties are bound to arbitrate only those matters which, by the clear language of the arbitration provision, they have agreed to arbitrate and that there will be no extension by construction or implication of that specific arbitration provision in order to broaden the salutary purposes of the Arbitration Act must be read against the context of the specific arbitration provision.

With respect to the third distinction between a generic arbitration provision in the contract and any other promissory undertaking in the contract, the decision in *Silver Cross Hospital v. S.N. Nielsen Co.* (1972), 8 Ill.App.3d 1000, 291 N.E.2d 247, is an example. In that case the arbitration provision in the construction contract was generic: "all disputes arising in connection with this contract." The dispute involved related to the liability of the owner under the contract to pay the contractor for work which had to be redone by the contractor owing to flooding of the premises which caused water damage to work which had already been done by the contractor. The relevant provision of the contract in respect of the alleged contractual liability of the owner was as follows:

---

[3] After a survey of four Illinois cases [all of which are included in our present survey], the court said:

"While these courts differ somewhat, we are of the opinion that, where the matter is raised, as here, by a motion for a stay, the court should, after a careful reading of the contract, itself decide the controlling question of whether or not the parties have agreed to arbitrate the items on which the respondent seeks arbitration." 13 Ill.App.3d 485, 489.

" 'Contractor shall at all times protect his excavation * * * from damage by rain-water, * * * and all other water. * * * * * * 'All work damaged by failure to provide protection shall be removed and replaced with new work at expense of Contractor.' " (8 Ill.App.3d 1000, 1001.) Under this provision, the owner took the position that it was under no contractual liability to pay the contractor for the work which had to be re-done. The contractor then took the position that there existed a dispute arising in connection with the contract within the meaning of the generic arbitration provision, and the contractor initiated arbitration proceedings. The owner filed an action for a declaratory judgment that arbitration of the matter sought to be arbitrated was not required under the generic arbitration provision and for an order staying the said arbitration proceeding. The trial court held for the owner. On appeal, the appellate court affirmed for the simple reason that there could be no dispute arising in connection with the contract in the absence of any contractual undertaking by the owner to pay the contractor for the cost of work which had to be re-done owing to water damage. The "clear and unequivocal" language requirement of the Illinois cases (a requirement which has been the subject of comment in this area of generic arbitration provisions) related, not to the generic arbitration provision itself, but rather to the underlying contractual undertaking by reason of which there can be said to be a genuine issue arising in connection with the contract. We know of no Illinois case in which the "clear and unequivocal" language requirement has been applied to the generic arbitration provision itself so as to exclude the third "reasonable doubt" alternative (in respect of the generic arbitration provision) referred to in *Del Bianco.*

The case of *Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.* (1969), 109 Ill.App.2d 224, 248 N.E.2d 289, is another Illinois decision involving this third distinction. It is highly relevant to the instant case because it also involves the matter of the arbitrability of the alleged contractual liability of an owner to compensate the contractor for extra costs incurred by the contractor by reason of alleged owner-caused delays in the construction work—the precise subject matter of one of the claims presented by Mayfair in the instant section 2 action.

In *Blades,* the arbitration provision was the same generic provision as in *Silver Cross Hospital:* "all disputes arising in connection with this contract." The contractor alleged that the owner had made changes and caused delays, by reason of which the contractor had incurred additional costs which had not been envisioned when the agreed contract price had been negotiated. The contractor, therefore, alleged that the owner was

liable under the contract for the said extra costs. The only contract provision which expressly referred to owner-caused delays provided that such delays should not terminate the right of the contractor to proceed with the work and that the contractor should not be charged with liquidated damages (agreed upon in another provision of the contract for failure of the contractor timely to complete the work), where such failure was the result of owner-caused delays. When the owner denied liability under the contract, the contractor made a demand for arbitration on the ground that there existed a dispute arising in connection with the contract. The owner thereupon filed a section 2 action for an order staying any arbitration proceedings. The contractor filed a motion for an order enjoining the further prosecution of the owner's section 2 action. The trial court denied the contractor's motion and issued an order staying any arbitration proceeding. On appeal, the appellate court affirmed because it did not see how the dispute was a dispute arising under the contract when the contract, although containing an express provision relating to owner-caused delays, did not contain any promissory undertaking by the owner to compensate the contractor for extra costs incurred by the contractor by reason of owner-caused delays; as to that matter, the contract was silent. As the appellate court said:

> "It is one thing to excuse the contractor from liquidated damages because of delays due to acts of the owner—it is quite another thing to provide for liquidated damages to the contractor for delays due to acts of the owner. The former as noted was provided for in the contract. There is nothing that we have been able to find nor pointed out to us in the contract documents which requires Jarman to pay the contractor any damages for losses occasioned by delays or the changes of the owner." (109 Ill.App.2d 224, 230.)

The "clear and unequivocal" language requirement related to the liability of the owner under the contract to compensate the contractor for extra costs incurred by reason of owner-caused delays and not to the generic arbitration provision itself, so that the case does not exclude the third "reasonable doubt" alternative (in respect of the generic arbitration provision) referred to in *Del Bianco.*

In this connection, we note a recent decision of the Supreme Court of Alaska (*University of Alaska v. Modern Construction, Inc.* (Alaska 1974), 522 P.2d 1132), in which the court, in a case involving the alleged liability of the University under the contract to compensate Modern for extra costs allegedly incurred by reason of University-caused delays, had occasion to make an interesting comment on our decision in *Blades*:

> "We agree with the Illinois court that where the parties have

clearly agreed to arbitrate only those 'disputes arising in connection with this contract' a particular claim is not arbitrable if it is nowhere mentioned in the contract. However, we do not agree that in all cases a particular claim is not arbitrable unless it is so designated by 'clear and unequivocal' contract language. Alaska's arbitration act evinces a strong public policy in favor of arbitration. [Footnote and citations omitted.] We would therefore allow ambiguous contract terms to be construed in favor of arbitrability where such construction is not obviously contrary to the parties' intent, especially where, as here, the party contesting arbitrability drafted the contract." [Footnote and citations conceding that the principle of strict construction against the party drafting the contract is drawn from insurance contract cases "under adhesional circumstances," but extending it to arbitration clauses in view of the public policy discerned in Alaska's Uniform Arbitration Act.] 522 P.2d 1132, 1138.

Our comments on the Alaska decision are as follows:

(1) The Alaska action was not a section 2 proceeding but a section 12 proceeding where no section 2 proceeding had been brought. (2) The generic arbitration provision in the Alaska case was far more generic than in *Blades*; it read: "[a]ll claims, disputes and other matters in question arising out of, or relating to this Contract or the breach thereof * * *," and the Alaska court concluded that this language necessarily gave the arbitrators the power to interpret the contracts because otherwise it would be impossible for them to determine which claims or disputes they could properly arbitrate. In a section 12 action in which the issue is whether the arbitrators had exceeded their powers (and in which no section 2 action had been filed), this construction of the arbitration provision is significant. (3) It is not clear whether the Alaska court's reference to our "clear and unequivocal" language requirement is related to the arbitration provision itself (which the latter portion of the text and the footnotes suggest) or to the liability of the University under the contract to compensate Modern for the extra costs incurred owing to University-caused delays (which the first portion of the text might suggest). (4) The Alaska contract provisions expressly relating, *inter alia*, to delay by any act or neglect of the owner or the architect provided for an extension of the contract completion date, but also expressly provided that the provision for extension of the completion date did not "exclude the recovery of damages for delay by either party under other provisions of the Contract Documents." We assume that such "other provisions of the Contract Documents" could include other implied-in-fact provisions as well as other express provisions.

We turn now to the issue of the arbitrability of the matter of Mayfair's claim for damages of approximately $243,000 for an alleged breach of the instant contract by Roosevelt in that the damages were allegedly incurred by Mayfair by reason of Roosevelt-caused delays and in that, under the contract, Roosevelt had undertaken a promissory obligation to pay for such damages. The only *express* reference in the Contract Documents to owner-caused delays which has been pointed out to us is in General Condition 19, which expressly provides in relevant part that "the contractor shall not be charged with liquidated damages  *  *  * when the delay in the completion of the work is due  *  *  *  b) to  *  *  *  acts of the owner  *  *  *." There is, therefore, in the Contract Documents no express provision under which Roosevelt undertook a promissory obligation to respond in damages to Mayfair for Roosevelt-caused delays. In the absence of such express contractual undertaking, Roosevelt contends that, under our decision in *Blades*, the issue of its said contractual liability is not arbitrable.

But that conclusion depends on whether the scope of the generic arbitration provision in the instant case is the same as the scope of the generic arbitration provision in *Blades*. The generic arbitration provision in the Contract Documents in the instant case is found in Supplemental General Condition 65. The relevant language of that provision is: "All claims, disputes and other matters in question arising out of, or relating to this Contract or the breach thereof, except as set forth with respect to the Architect's decisions on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of final payment as otherwise provided,[4] shall be decided by arbitration in accordance with the Construction Industry Arbitration Association then obtainin[g] unless the parties mutually agree otherwise  *  *  *." In contrast, the relevant language of the generic arbitration provision in *Blades* was simply "all disputes arising in connection with this contract." It seems clear that the scope of the generic arbitration provision in the instant contract is broader than the scope of the generic arbitration provision in *Blades*. The addition of the noun "claims" and of the phrase "other matters in question" to the single noun "disputes" is alleged to be significant, as is the addition of the phrase "or relating to" to the phrase "arising out of" (or, in *Blades*, "arising in connection with"), as is the addition of the phrase "or the breach thereof." Also significant, we think, is the addition of the two express exceptions to the generic language; the inference would be that no other exceptions were intended. Hence, it is Mayfair's contention that the broader scope of the generic arbitration provision in the instant case evidences the parties' intent to

---

[4] The reference to these exceptions is to Supplemental General Condition 12.

include the precise matter held not to have been included in *Blades*. In addition, Mayfair presents a contention which, as far as one can tell from the opinion in *Blades*, does not appear to have been presented in that case, namely, that an Illinois decision (*W. H. Stubbings Co. v. World's Columbian Exposition Co.* (1903), 110 Ill.App. 210), has held that construction contracts may involve promissory undertakings which are implied-in-fact as well as express. In *Stubbings*, the construction contract was held to imply a promissory undertaking on the part of an owner to keep the construction site in a state which would allow the contractor timely to perform the contract, for the breach of which implied undertaking the owner must respond in damages. (See also, as persuasive authority to the same effect, *North Shore Sewer & Water, Inc. v. Corbetta Construction Co.* (7th Cir. 1968), 395 F.2d 145.) Mayfair urges us to find a similarly implied-in-fact promissory undertaking by Roosevelt not to cause Mayfair to incur extra costs in completing the work by reason of Roosevelt-caused delays.

Finally, as persuasive authority, our attention is called to two cases in which, in construing a generic arbitration provision identical to the one involved in the instant case, the court held that the matter of the implied contractual liability of the owner for owner-caused delay was arbitrable: *University of Alaska v. Modern Construction Co.* (Alaska 1974), 522 P.2d 1132; *Sears Roebuck & Co. v. Glenwal Co.* (S.D. N.Y. 1970), 325 F.Supp. 86, *aff'd* (2d Cir. 1971), 442 F.2d 1350.

■■ As noted, the arbitrability of this claim of Mayfair for damages for alleged Roosevelt-caused delay received the lion's share of attention in the trial court, and Roosevelt thought its total denial of arbitrability had the firmest foundation in respect of this claim (owing presumably to our decision in *Blades*). Nevertheless, the trial court held the claim to be arbitrable. We affirm that decision for the reasons advanced by Mayfair in our foregoing summary of Mayfair's position.

We turn now to Roosevelt's claim for damages for incomplete or unsatisfactory items on the comprehensive amended "punch list" of items, prepared by the architect after the construction work as a whole had been completed. Roosevelt's position is that this claim is not arbitrable.

The controversy as to the arbitrability of this claim involves the construction of conflicting provisions of the Contract Documents. Boiled down to essentials, the positions of the parties are as follows:

(1) Roosevelt relies on General Conditions 20 and 35.

(2) Mayfair relies on Supplementary General Conditions 12 and 65.

(3) Roosevelt counters with paragraph IV of the principal contract and General Condition 41.

Supplementary General Conditions 12 and 65 have already been set

out in this opinion, as have paragraph IV of the principal Contract and General Condition 41. We now set out General Conditions 20 and 35.

"General Condition 20. *Correction of Work.* All work, all materials, whether incorporated in the work or not, all processes of manufacture, and all methods of construction shall be at all times and places subject to the inspection of the Architect/Engineer who shall be the final judge of the quality and suitability of the work, materials, processes of manufacture, and methods of construction for the purposes for which they are used. Should they fail to meet his approval, they shall be forthwith reconstructed, made good, replaced and/or corrected, as the case may be, by the Contractor at his own expense. * * * If in the opinion of the Architect/Engineer, it is undesirable to replace any defective or damaged materials or to reconstruct or correct any portion of the work injured or not performed in accordance with the Contract Documents, the compensation to be paid to the Contractor hereunder shall be reduced by such amount as in the judgment of the Architect/Engineer shall be equitable.

* * *

General Condition 35. *Architect/Engineer's Authority.* The Architect/Engineer shall give all orders and directions contemplated under this contract and specifications relative to the execution of the work. The Architect/Engineer shall determine the amount, quality, acceptability, and fitness of the several kinds of work and materials which are to be paid for under this contract and shall decide all questions which may arise in relation to said work and the construction thereof. The Architect/Engineer's estimates and decisions shall be final and conclusive, except as herein otherwise expressly provided. In case any question shall arise between the parties hereto relative to said contract or specifications, the determination or decision of the Architect/Engineer shall be a condition precedent to the right of the Contractor to receive any money or payment for work under this contract affected in any manner or to any extent by such question.

The Architect/Engineer shall decide the meaning and intent of any portion of the specifications and of any plans or drawings where the same may be found obscure or be in dispute. Any differences or conflicts in regard to their work which may arise between the Contractor under this contract and other Contractors performing work for the Owner shall be adjusted and determined by the Architect/Engineer."

In construing a contract, the ultimate goal is to discern and give effect to the intent of the parties as that intent is expressed or is implied

in fact in the contract taken as a whole. Since it is presumed that each provision of the Contract Documents was inserted deliberately and for a purpose, the intention of the parties will not be determined from isolated provisions of the contract. (*E.g., Martindell v. Lake Shore National Bank* (1958), 15 Ill.2d 272, 154 N.E.2d 683.) In construing the Contract Documents as a whole, provisions which seem to be in conflict should be reconciled if possible. *J. & R. Electric Co. v. Edward P. Allison Co.* (1970), 125 Ill.App.2d 123, 260 N.E.2d 755; *Agnell v. Illinois Bell Telephone Co.* (1950), 342 Ill.App. 516, 97 N.E.2d 483.

For emphasis, we excerpt the key language of General Conditions 20 and 35: the architect/engineer "shall be the final judge of the quality and suitability of the work, materials, processes of manufacture, and methods of construction for the purposes for which they are used." (General Condition 20); "The Architect/Engineer shall determine the amount, quality, acceptability, and fitness of the several kinds of work and materials which are to be paid for under this contract and shall decide all questions which may arise in relation to said work and the construction thereof. The Architect/Engineer's estimates and decisions shall be final and conclusive, except as herein otherwise expressly provided. In case any question shall arise between the parties hereto relative to said contract or specifications, the determination or decision of the Architect/Engineer shall be a condition precedent to the right of the Contractor to receive any money or payment for work under this contract affected in any manner or to any extent by such question." (General Condition 35). Except for one phrase ("except as herein otherwise expressly provided"), this language clearly bars the arbitrability of any decision of the architect/engineer relative to the construction work, methods, and materials, and makes his decision as to any question arising between the parties relative to these aspects of the contract a condition precedent to the right of the contractor to receive any money or payment for work under the contract affected in any manner or to any extent by such question. See the construction given to General Condition 35 in *Paschen Contractors, Inc. v. John J. Calnan Co., supra.*

On the other hand, the language of Supplementary General Conditions 12 and 65 equally as clearly designates the Architect as merely, in the first instance, the interpreter of the requirements of the Contract Documents and the judge of the performance thereunder by both the owner and the contractor, and provides for the arbitrability of any such initial determination or decision of the architect except his decisions in matters relating to artistic effect.

Prescinding for the moment from Roosevelt's ultimate reliance on paragraph IV of the Principal Contract and General Condition 41, do Supplementary General Conditions 12 and 65 come within the purview

of the phrase in General Condition 35 "except as herein otherwise expressly provided"? It is Mayfair's position that they do. If they do, then the only nonarbitrable decisions of the architect are his decisions in matters relating to artistic effect. Furthermore, even as to those matters, it is Mayfair's position that the issue of whether or not a given decision of the architect does relate to artistic effect is itself an arbitrable issue, whether the court or the arbitrator establishes the standards by which to determine the meaning of "artistic effect". In effect, therefore, to adopt Mayfair's full position is to read General Conditions 20 and 35 out of the Contract Documents.

What is the situation if, as Roosevelt contends, Supplementary General Conditions 12 and 65 do not come within the purview of that pregnant exception in General Condition 35? Would the adoption of Roosevelt's position read Supplementary General Conditions 12 and 65 out of the Contract Documents? We think not. The architect's decisions as to the construction work, methods, materials, specifications, plans and drawings, and his interpretation of the Contract Documents as to those matters would be final and nonarbitrable, and his decision as to any question arising between the parties as to those aspects of the contract would be an absolute condition precedent to the contractor's right to be paid for work under the contract affected in any manner or to any extent by such question. The nonarbitrable character of the architect's decisions in matters relating to artistic effect under the express exception in Supplementary General Condition 65 becomes of no importance, because it is already subsumed under General Condition 35: whatever may be the precise scope of decisions relating to artistic effect, such decisions must necessarily relate to the artistic effect of the building, and *all* decisions as to materials, methods, and work on the building are nonarbitrable, even those *not* relating to artistic effect.

What, then, would be left to be arbitrable under Supplementary General Condition 65? The answer is the architect's decisions in the area described in Supplementary General Condition 12 as the general administration of the contract, including performance of the functions thereafter described in that Supplementary General Condition, and matters falling within the implied exception to General Condition 35 established in the decision in *Paschen*.[5]

---

[5] In a section 2(b) proceeding, the identical General Condition 35 made the decisions of the architect within the scope of that condition final and conclusive. The arbitration provision, while generic ("all disputes arising hereunder"), was far less generic than in the instant case. The court held that the decisions of the architect relative to the architect's own performance there being disputed, while within the express scope of General Condition 35, were, by implied exception thereto, not final and conclusive, but instead arbitrable under the generic arbitration provision.

The conclusion is that, by adopting Roosevelt's position as to the non-arbitrability of its claim in respect of the items on the comprehensive amended "punch list," we allow Supplementary General Conditions 12 and 65 to remain operative to a significant extent, whereas the adoption of Mayfair's position would read General Conditions 20 and 35 out of the Contract Documents altogether. Under familiar principles of construction, we must give effect to all provisions of the contract to the extent possible. Hence, we adopt Roosevelt's position as to its claim in respect of the "punch list" items. The decision in *Wisconsin Bridge and Iron Co. v. Missouri-Illinois Bridge Co.* (1933), 272 Ill.App. 12, is not in point because the contract involved in that case did not provide that any decisions of the architect were final and conclusive, and the arbitration provision as to disputed decisions of the architect was specifically restricted to decisions relating to his interpretation of the drawings and specifications.

The suggestion of Mayfair that the final and conclusive decisions of the architect under General Conditions 20 and 35 were to be final and conclusive only during the period of construction, but were to be subject to arbitration thereafter, is a gloss for which there is not only no support in the language of General Conditions 20 and 35, but which also runs directly afoul of General Condition 41 by according hierarchical priority to Supplementary General Conditions 12 and 65 over General Conditions 20 and 35. Adverting now for the first time to the impact of the provisions of General Condition 41[6] and of paragraph IV of the principal Contract, it is, as Roosevelt contends, additionally necessary to give priority to General Conditions 20 and 35 in this conflict between them and Supplementary General Conditions 12 and 65 and to conclude that the "punch list" items are nonarbitrable.

■■ For these reasons, we reverse the decision of the trial court that Roosevelt's claim based on the "punch list" items is arbitrable and hold that it is not arbitrable.

As to Roosevelt's claim for liquidated damages, we affirm the decision of the trial court that this issue is arbitrable. Roosevelt's contention of nonarbitrability is based upon paragraph I of the principal Contract and General Condition 19 and then on the priority established by paragraph IV of the principal Contract and General Condition 41. But the language of I of the principal Contract and General Condition 19 does not provide that the decision of the Owner as to the contractor's liability for, and the amount of, liquidated damages (even when made on the basis of

---

[6] For convenience, we again quote General Condition 41:
  "Any provisions in any of the Contract Documents which may be in conflict or inconsistent with any of the paragraphs in these General Conditions shall be void to the extent of such conflict or inconsistency."

facts and judgments supplied by the architect) is to be final and conclusive (as was provided in General Conditions 20 and 35 as to the architect's decisions relating to the quality and acceptability of the construction work, materials, and methods). General Condition 19 merely provides that the owner shall ascertain the facts and notify the contractor of the owner's decision within a reasonable time. The decision is to be made by the owner and not by the architect. Even if one were to concede that the facts supplied by the architect as to the ultimate completion dates of the various stages of the work and as to whether the delay in the completion of the work is attributable to one of the causes for which the contractor is not to incur liability for liquidated damages (upon which facts the owner's decision must rest), necessarily involve the exercise of judgment on the part of the architect, still such aspects of the construction work are clearly of a different nature than the aspects of the construction work which are confided to the final and conclusive decision of the architect under General Conditions 20 and 35. There is good reason to leave to the final and conclusive decision of the architect the technical and artistic matters relating to the construction work, while allowing matters relating generally to the administration of the contract to be arbitrable. *Cf. Wisconsin Bridge & Iron Co. v. Missouri-Illinois Bridge Co.* (1933), 272 Ill.App. 12.

■■ Since, therefore, the decision of the owner as to the liability for, and the amount of, liquidated damages is not expressed to be final and conclusive (whether or not made in conjunction with the architect), there is nothing to preclude the applicability of Supplementary General Conditions 12 and 65 to that decision. *Weld v. First National Bank* (1912), 255 Ill. 43, 99 N.E. 72, relied upon by Roosevelt, is not in point since there was in that case no agreement to submit the architect's decision to arbitration, as there is in the instant case under Supplementary General Conditions 12 and 65.

As to Mayfair's claims for compensation for extras and for change orders, allegedly attributable to Roosevelt, to the extent to which such alleged extras and change orders had not been approved by the architect, it is Roosevelt's contention that these claims have become non-arbitrable by reason of Mayfair's failure to demand arbitration within 30 days after having been notified that the architect had disapproved them, a requirement which Roosevelt alleges is an express condition precedent to arbitrability under Supplementary General Condition 12.[7, 8] Roosevelt's con-

---

[7] Roosevelt also suggests that neither of these two claims constitutes a bona fide dispute between the parties owing to the failure of Mayfair to allege facts which would warrant an arbitrator's reversal of the architect's disapproval. But the fact that the architect did approve claims by Mayfair for extras in the amount of almost $160,000 and did approve claims by Mayfair for change orders in the amount of

tention, therefore, necessarily concedes that this type of architect's decision falls within the provision of Supplementary General Condition 12. Hence, the decision, though initially arbitrable, shall be final where it is submitted to the contractor in a writing which expressly states that the decision is final but subject to appeal, and where there is no demand for arbitration within 30 days. It is conceded by Mayfair that no demand for arbitration of these claims was made within 30 days from the architect's notification to Mayfair of the architect's decision. By reason, therefore, of Mayfair's failure timely to demand arbitration, Roosevelt contends that the architect's decisions have become final and nonarbitrable.

■■ But Mayfair responds by contending that its obligation to demand arbitration within 30 days must be triggered by the architect's express written notification that his decision is final but subject to appeal, and that the architect failed so to characterize his decision in his respective notifications to Mayfair. Since there is no evidence in the record that the architect so characterized his decisions, we agree with Mayfair and with the trial court that these claims remain arbitrable.

As far as we can see, Mayfair's final claim for payment of the balance of the contract price with interest from its due date will automatically be disposed of by the disposition of the other five claims between the parties, because Roosevelt has not denied that it owes Mayfair the said balance of the contract price in the absence of any set-offs.

In summary, then, and for the foregoing reasons:

1. We affirm the decision of the trial court that the following claims are arbitrable:

   Roosevelt's claim for liquidated damages; Mayfair's claim for damages incurred by reason of Roosevelt-caused delay; Mayfair's claims for disapproved extras and change orders.

2. We reverse the decision of the trial court that Roosevelt's claim for damages based on the architect's consolidated amended "punch list" is arbitrable, and we hold that it is not arbitrable.

The cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part, and remanded.

STAMOS and LEIGHTON, JJ., concur.

over $22,000 sufficiently indicates that the disapproved extras and change orders constitute actual disputes.

[8] The relevant language in the New York case cited by Roosevelt (*Exercycle Corp. v. Maratta* (1961), 9 N.Y. 2d 329, 214 N.Y.S. 2d 353, 174 N.E.2d 463, 465), which was cited with approval in *Blades*, merely establishes that failure to comply with a condition precedent to arbitration will make the claim nonarbitrable, and that such a situation is one of four commonly recognized exceptions to an otherwise applicable arbitration provision.

## SUPPLEMENTAL OPINION ON DENIAL OF PETITION
## FOR REHEARING

Mr. JUSTICE HAYES delivered the opinion of the court:

The issue as to the arbitrability of the punch list items, as presented to the trial court in this proceeding under section 2 of the Uniform Arbitration Act (Ill. Rev. Stat. 1971, ch. 10, par. 102), was framed by the demand for arbitration and by the pleadings in the trial court (Roosevelt's application for a stay of arbitration and Mayfair's motion to dismiss the application). Roosevelt contended that no punch list items were arbitrable, since the punch list items represented decisions of the architect within the category described in General Condition 35 and such decisions were final under that General Condition. Mayfair contended that, even though the punch list items represented decisions of the architect within the category described in General Condition 35, all punch list items were nevertheless arbitrable under the broad generic arbitration provision in Supplementary General Condition 65. The trial court held for Mayfair that all the punch list items were arbitrable. We reversed that holding and held that under General Condition 35 the architect's decisions as to the construction work, methods, materials, specifications, plans and drawings and his interpretations of the Contract Documents as to those matters were final and nonarbitrable despite the broad generic arbitration provision in Supplementary General Condition 65. Since the punch list items concededly fell into this category, no punch list items were arbitrable.

We pointed out, however, that an implied exception to the finality of the architect's decisions under General Condition 35 was established by *Paschen Contractors, Inc. v. John J. Calnan Co.* (1973), 13 Ill.App.3d 485, 490, 300 N.E.2d 795, 799:

> "[General Condition 35] does not * * * give the architect the power to pass upon his own errors and omissions, and to require a [contractor] to perform extra work and to furnish materials not encompassed in the architect's own deficient plans and specifications, all without compensation. To permit this would be an outrageous result not contemplated by the parties, and one not compelled by the language of the contract."

*Paschen* held that such decisions of the architect were not intended by the parties to be final; as nonfinal, they then became arbitrable under the generic arbitration clause involved in the *Paschen* case. In the instant case, no issue involved the *Paschen* exception had been framed either by the demand for arbitration or by the pleadings in the trial court, so that no such issue was before us for review.

In its petition for rehearing, Mayfair now directs our attention to the following sentence in its brief in this court:

> "[I]t is our contention in the arbitration that many of the punch list items * * * were the result of errors, mistakes or faulty instructions of the architect."

But no such contention was made either in the demand for arbitration or in the pleadings in the trial court. As to the punch list items, the issue presented by the pleadings in the trial court was solely an "all or none" issue: Mayfair contended that all the punch list items were arbitrable, whereas Roosevelt contended that none were. We held for Roosevelt. While our holding on the issue as presented was that none of the punch list items were arbitrable, we went out of our way to note the holding in *Paschen* that, nevertheless, certain architect's decisions in the category described as final in General Condition 35 were nonfinal because the parties had not manifested an intent in General Condition 35 that such decisions were to be final; and, as nonfinal, such decisions then fell within the generic arbitration provision involved in *Paschen*.

In its petition for rehearing, Mayfair asks us to clarify our holding for Roosevelt that no punch list items were arbitrable by excepting from that holding punch list items within the category involved in the *Paschen* case. Even though that issue was not presented to the trial court and therefore was not before us for review, we went out of our way in our opinion to make it clear that our holding on the issue that was before us for review did not, as a matter of law, exclude the *Paschen* exception. We express no opinion as to whether Mayfair may now demand arbitration of some only of the punch list items on the allegation that those particular items fall within the *Paschen* exception, except to say that nothing in our holding as such precludes Mayfair from doing so, because our decision resolved merely the issue presented to the trial court and before us for review, namely, the arbitrability of "all or none" of the punch list items.

In its petition for rehearing, Mayfair next asks us to clarify whether our holding that none of the punch list items were arbitrable reverses *sub silentio* the many Illinois cases holding that decisions of an architect which fall literally within a finality provision are nevertheless nonfinal where the decisions are capricious, arbitrary, biased, or unfair, or are decisions which disregard important, clearly established, or obvious facts. Our holding does not do so. There was no such issue presented as to the punch list items either by the demand for arbitrary or by the pleadings in the trial court, so that no such issue was before us for review. Hence, we had no occasion to refer to the further exception to the finality of the architect's decisions established by such cases as *County of Cook*

*v. Harms* (1883), 108 Ill. 151; *Edward Edinger Co. v. Willis* (1931), 260 Ill.App. 106; and *Rawle v. Gilmore* (1898), 76 Ill.App. 372. This further exception also exists as a matter of law, and we think the rationale for this further exception is the same as that for the *Paschen* exception, namely, that the parties did not, by the language of the finality provision, manifest their intent that such decisions of the architect were to be final. As nonfinal decisions, whether or not such decisions are arbitrable will then depend on the scope of the arbitrability provision. Again, however, we express no opinion as to whether Mayfair may now demand arbitration of some only of the punch list items on the allegation that those particular items fall within this further exception to the finality provision, except to say that nothing in our holding as such precludes Mayfair from doing so, because our decision resolved merely the issue presented to the trial court and before us for review, namely, the arbitrability of "all or none" of the punch list items.

The petition of defendant-appellee for rehearing is hereby denied.

Petition for rehearing denied.

STAMOS and LEIGHTON, JJ., concur.