BERT C. YOUNG & SONS CORP., Plaintiff-Appellant, *v.* AN ASSOCIATION OF FRANCISCAN SISTERS OF THE SACRED HEART, d/b/a St. Joseph Hospital, Defendant-Appellee.

Second District· No. 76-16

Opinion filed April 7, 1977.

Donald Weaver, of Geister, Schnell, Richards & Brown, of Elgin, for appellant.

Rifken & Rifken, of Elgin, for appellee.

Mr. JUSTICE BOYLE delivered the opinion of the court:

Plaintiff, Bert C. Young & Sons Corp., brought a suit for declaratory relief in the Sixteenth Judicial Circuit Court of Kane County against An Association of Franciscan Sisters of the Sacred Heart, a corporation. Young asked that court to construe a contract between the parties for the

construction of some heating and air-conditioning work. The trial court granted the Sisters' motion to dismiss the complaint for declaratory judgment. It is from the trial court's dismissal of this complaint which Young now appeals.

The dispute centers on whether Young was responsible under its contract with the Sisters for the installation of piping and ductwork for the future construction of a seventh floor.

The defendant, An Association of Franciscan Sisters of the Sacred Heart, a corporation, solicited bids from contractors for the purpose of building a hospital in Elgin (St. Joseph Hospital). Plaintiff, Bert C. Young & Sons Corp., pursuant to the Sisters' invitation for bids, submitted a "Proposal Form for Heating and Air Conditioning Work." Subsequent to this proposal and invitation to bid, Young and the Sisters entered into a standard form agreement between owner and contractor on January 15, 1971. This contract was the standard September 1967 edition of the owner-contractor agreement of the American Institute of Architects and required Young to perform the heating and air conditioning work in the construction of the new St. Joseph Hospital in Elgin, Illinois.

The alternate proposal H-2(a), submitted by the Sisters to Young with their invitation for bids, specifically includes "the piping and ductwork for a future seventh floor * * * for future connection" in addition to the construction and addition of the fifth and sixth floors. The contract, itself, only mentions in alternate H-2(a) the work to be added for constructing and finishing the fifth and sixth floors. The alternate proposal H-2(a) submitted by Young also never mentions the piping and ductwork for a future seventh floor.

The mechanical engineers involved in the contract initially determined that the installation of the piping and ductwork above the sixth floor for future construction was part of the contract between Young and the Sisters. This determination was submitted to the architect pursuant to section 2.2.6 in the contract, which provided that "the architect will be, in the first instance the interpreter of the requirements of the contract documents, and the judge of the performance thereunder by both the Owner and Contractor." The architect decided that "the piping for the future seventh floor, above the sixth floor ceiling, is included and is part of the signed contract."

The contract provided in section 2.2.11 that: "the failure to demand arbitration within said thirty days' period [from the date of the architect's decision] will result in the architect's decision becoming final and binding upon the Owner and Contractor." Young failed to demand arbitration of the architect's decision and brought this suit for declaratory relief.

The first issue presented is whether alternate proposal H-2(a) to install the ductwork and pipework for a future seventh floor was ever made a

part of the contract between Young and the Sisters. If the alternate proposal to install the piping and ductwork was made a part of the contract, then Young's failure to arbitrate the architect's decision acts as a waiver, and Young will be bound by the decision.

Article 8 of the contract between the parties enumerates the contract documents, which constitute the entire agreement between the owner and the contractor. Article 8 lists the "Heating and Air-Conditioning *Section VI* Alternate Proposals" as being one of the contract documents included in the agreement, in addition to various other documents. Article 1 of this contract confirms the parties' intent that the contract documents of *this* agreement consist of "all addenda * * * and modifications * * * an enumeration * * * of which appears in Article 8." The alternate proposals submitted by the Sisters were definitely made a part of the contract and clearly expressed in the contract through article 1 and article 8. The problem is with the inconsistencies between the Sisters' *alternate proposals* and the proposals submitted by Young, both of which are part of the contract. Article 5 of the finalized contract lists alternate H-2(a) as an addition to the base bid, but does not say whether it is Young's or the Sisters' alternate proposal which is part of the contract. The language of alternate H-2(a) in the finalized contract is "for constructing [the] fifth and sixth floors and finishing both [the] fifth and sixth floors" for $65,313. These clauses are not, however, inconsistent with each other when read in connection with the whole contract entered into by the parties. The contract document, itself, could never hope to express in five pages the specifications and drawings for a hospital of this size. Article 8's miscellaneous provision was meant to incorporate by reference all the extensive documents and drawings the parties wanted in their contract.

Young was given the right to bid on the alternate proposals submitted by the Sisters, in addition to the base bids. The total contract entered into by the parties was for $1.2 million. Young now has determined that the alternate proposal H-2(a) they submitted did not include the piping and ductwork for a future seventh floor. The sisters have withheld $43,000 from Young for his failure to satisfactorily complete the contract.

■■ This court has determined that the Sisters' alternate proposal H-2(a) and Young's alternate proposal H-2(a) were clearly expressed in the contract and incorporated into the contract through article 1 and article 8.

The next issue presented is whether the architect had authority to interpret this contract provision. If the architect did have authority, then Young's failure to arbitrate the architect's decision will bind Young to the architect's decision. If the architect did not have authority to decide this dispute, then Young was not bound to proceed through arbitration. Young then would be entitled to have a court determine his motion for declaratory judgment.

The architect has authority under section 2.2.6 of the contract to be the first interpreter of the contract and documents. This authority extends only over those contract provisions which are clearly expressed in the contract. Since the contract includes the section VI alternate proposals of the Sisters as part of the contract documents incorporated through article 1 and article 8 of the contract, these provisions are clearly within the architect's scope of authority to interpret. The contract, through section VI of the alternate proposals of the Sisters, specifically includes the piping and ductwork for a future seventh floor in clear and unambiguous language. The interpretation of this clause as to what ductwork and piping the parties meant to be completed was the architect's job as first interpreter of the contract. Since all the proposals and alternate proposals were clearly expressed in the contract, the architect had the authority to interpret the contract. No extension of the *arbitration clause* by construction or implication by the architect was necessary (*Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 242 N.E.2d 149), because all the contract documents in dispute were clearly a part of the contract.

This court, therefore, finds that Young's alternate proposal was a part of the contract and the architect had authority to interpret the clause because it was clearly expressed in the contract.

Young cannot claim to be ignorant of these clauses being a part of the contract because all of the Sisters' air conditioning alternate proposals contained language asking for bids for ductwork and piping for future construction and additions for the hospital.

■■■ The failure of Young to arbitrate this dispute, which was one the parties contracted to arbitrate, acts as a waiver of Young's right to demand arbitration and binds Young to the architect's decision. (*Roosevelt University v. Mayfair Construction Co.* (1975), 28 Ill. App. 3d 1045, 331 N.E.2d 835.) The trial court properly dismissed Young's complaint for declaratory judgment. The judgment of the Circuit Court of Kane County is therefore affirmed.

Judgment affirmed.

RECHENMACHER, P. J., and SEIDENFELD, J., concur.