Harrison F. Blades, Inc., a Corporation, Plaintiff-Appellee, v. Jarman Memorial Hospital Building Fund, Inc., a General Not-for-Profit Corporation, E. H. Marhoefer, Jr. Co., a Corporation, Carson-Payson Co., Illinois Building Foundation Construction Corporation and R. H. Bishop Company, Defendants, Jarman Memorial Hospital Building Fund, Inc., a General Not-for-Profit Corporation, Carson-Payson Company, Defendants-Appellees, E. H. Marhoefer, Jr. Co., a Corporation, Defendant-Appellant.

Gen. No. 11,008.

Fourth District.

June 3, 1969.

Massey, Anderson, Gibson & Pearman, of Paris (Ralph S. Pearman, of counsel) ; Lord, Bissell & Brook, of Chicago (Gordon R. Close, Thomas W. Dempsey and Paul W. Engstrom, of counsel), for appellant.

Lemna & Lee, of Tuscola and Acton, Baldwin, Bookwalter, & Meyer, of Danville (Frank J. Meyer and Harvey H. Acton, of counsel) ; Samuels, Miller, Schroeder, Jackson & Sly, of Decatur (Carl R. Miller, Jerald E. Jackson and Thomas S. Sly, of counsel), for appellee.

SMITH, J.

This appeal involves disputes arising between an owner, the general contractor and two subcontractors in a building construction project in Tuscola, Illinois. For convenience sake, the owner will be referred to as Jarman, the general contractor as Marhoefer, one subcontractor as Blades, and the second contractor as Carson-Payson. Taking the position that the contracts called for the arbitration of the various disputes, Marhoefer made a demand for arbitration proceedings before the American Arbitration Association. The owner and the two subcontractors requested that the arbitration hearings be held in Tuscola and this request was denied. Blades then filed this suit for an accounting between all the parties. The owner filed an application with the circuit court in this suit to stay arbitration. The general contractor filed a motion to enjoin the judicial proceedings and to direct the parties to proceed with the pending arbitration proceedings. The circuit court granted the application to stay the arbitration proceedings and denied the motion to direct the parties to proceed with arbitration. Marhoefer appeals from these orders.

■ After the trial of this case in the circuit court and after the briefs were filed in this court, our Supreme Court decided the case of Flood v. Country Mut. Ins. Co., 41 Ill2d 91, 242 NE2d 149. That decision makes it clear that the Illinois Uniform Arbitration Act, Ill Rev Stats 1967, c 10, § 101 et seq., does not control the issues which are subject to arbitration, but such issues have their birth in and are delineated by the arbitration contract between the parties. At page 94, the court stated:

"Despite the salutory purpose of our Arbitration Act, parties are only bound to arbitrate those issues which by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication."

This language is simple, clear and concise. Whether or not and what they arbitrate must be stated in the contract between the parties in crystal clear language unextended and unenlarged either by construction or by implication. In Flood, our Supreme Court noted that the policy endorsement in question did not cover all disputes between the insured and the insurer and that there was no language in the endorsement which could be read as an agreement to submit to arbitration the issue of coverage. In Liberty Mut. Fire Ins. Co. v. Loring, 91 Ill App2d 372, 235 NE2d 418, the policy in litigation defined a "hit-and-run" vehicle as a vehicle which causes bodily injury to an insured arising out of physical contact of such vehicle with the insured or with an automobile which the insured is occupying at the time of the accident. The Appellate Court held that the trial court should have heard evidence as to whether or not there was physical contact between the defendant's vehicle and that of the alleged hit-and-run motorist and whether there was resultant coverage of the defendant's injuries under the policy provisions. We think it is clear from Flood and Liberty Mutual that in Illinois for an issue to be the subject of

arbitration, it must be included in the contract in clear and unequivocal language.

Marhoefer cites United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 US 574, 4 L Ed2d 1409, 80 S Ct 1347, as authority for the proposition that all doubts as to the arbitrability of an issue should be determined by the arbitrators and not by the courts, and that the courts may deny access to the arbitrator's expertise only where the issue in question has been expressly excluded as an arbitrable issue in the contract. Thus, he says, since there is no provision in this contract expressly excluding arbitration of damages caused by the owner's changes and delays, that issue is subject to arbitration. The difficulty with this position is that the case cited is not blanket authority for the proposition for which it is cited and is expressly limited, as we read, to labor disputes. Its dichotomy is predicated upon the proposition that arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself. Indeed the power of a court to vacate an award under Ill Rev Stats 1967, c 10, ¶ 112, is delimited by § 12(5)(c), where the arbitration agreement is a part of or pursuant to a collective bargaining agreement. The reasoning in Warrior is neither persuasive nor controlling in the area of arbitration which faces us and we do not regard it as an "open sesame" to uninhibited arbitration where collective bargaining is absent.

The demand for arbitration against Jarman sought $200,000 damages on account of changes and delays perpetrated by Jarman. The demand served on the subcontractors was to arbitrate the amount of damages to the contractor as a result of the delays occasioned by the respective subcontractors. Marhoefer argues that these matters are subject to arbitration by virtue of ¶ 7(a) of the General Conditions which were a part of the specifications and which reads "7. Arbitration—(a) It is mutu-

ally agreed that all disputes arising in connection with this contract shall be submitted to arbitration in accordance with the provisions of the current Standard Form of Arbitration Procedure of the American Institute of Architects. . . ." In neither Flood nor Liberty was there a general provision similar to the one in the case at bar. In Flood and Liberty, the court had no difficulty in determining that the scope of the arbitration agreement did not include the precise issue submitted and that an agreement to arbitrate some disputes cannot be extended to include an agreement to arbitrate all disputes.

■ It seems to have been the intention of the committee who wrote the Uniform Arbitration Act that the preliminary hearings to compel or to stay arbitration were restricted to a single question and that was "Is there an agreement to arbitrate?" Pirsig, Some Comments on Arbitration Legislation and the Uniform Act, 10 Vanderbilt L Rev 685, 694 (1957). Who answers this question—the court or the arbitrators?

■ Marhoefer cites School Dist. No. 46 v. Del Bianco, 68 Ill App2d 145, 215 NE2d 25, and Layne-Minnesota Co. v. Regents of University of Minnesota, 266 Minn 284, 123 NW2d 371, for the proposition that where the scope of the arbitration agreement is reasonably debatable, the issue of arbitrability should be initially determined by the arbitrators. The Minnesota court held that under their statutes a subsequent court review fully protected the parties and in Del Bianco, it was stated that the parties were adequately protected by § 12 of our statute authorizing the court to vacate an award where the arbitrators exceed their powers or where there is no arbitration agreement. Ill Rev Stats 1967, c 10, ¶ 112, § 12. Marhoefer further contends that the determination of this issue by the arbitrators is not a mere matter of procedural formality. He asserts that the decision of the arbitrators on such questions very frequently can and should be different than that of the court of law, and

this is because arbitrators are not confined to strict legal principles, but can decide questions according to their own concepts of what is just and right. Cited in support of this last proposition is Rosa v. Transport Operators Co., (NJ), 133 A2d 24, 27 (1957), and Mahaffy v. Gray, 242 Ore 522, 410 P2d 822, 823, (1966). Neither free-wheeling policy appeals to us nor do we think either policy is within the contemplation of the Uniform Arbitration Act. The issue of whether or not there is any jurisdiction to arbitrate or the limits of that jurisdiction should be determined at the earliest possible moment and should be controlled by judicial guidelines. To be realistically effective, § 2(a) and § 2(b) of the Uniform Arbitration Act, Ill Rev Stats 1967, c 10, ¶ 102, § 2, must apply not only to the existence of an agreement but also to the scope of that agreement. We read Flood and Liberty Mutual basically to so hold. In Del Bianco, which involved a suit by owner against an architect for negligence in the performance of his duties under the contract, the parties contracted to arbitrate "all questions in dispute under this agreement." The court there properly held that the dispute went to the very heart of the performance of the contract and was subject to arbitration—and rightly so. The dispute involved the performance by the architect of the very duties imposed upon him by the contract. It seems abundantly clear that the parties had by their contract agreed to arbitrate such a dispute.

In the case at bar, the agreement in its precise language says to arbitrate "all disputes arising in connection with this contract." The plaintiff then seeks to arbitrate an equitable adjustment of the contract consideration to reflect additional costs due to changes and delays perpetrated by the owner and the damage sought is $200,000. The issue sought to be arbitrated is "the extent of the owner's responsibility for the losses sustained by the undersigned." Jarman asserts and we think with some reason that this precise issue is entirely beyond the

pale of the contract documents. Paragraph 31(c) of the General Conditions provides "That the right of the contractor to proceed shall not be terminated or the Contractor charged with liquidated damages because of any delays in the completion of the work due to . . . acts of the Owner. . . ." It is one thing to excuse the contractor from liquidated damages because of delays due to acts of the owner—it is quite another thing to provide for liquidated damages to the contractor for delays due to acts of the owner. The former as noted was provided for in the contract. There is nothing that we have been able to find nor pointed out to us in the contract documents which requires Jarman to pay the contractor any damages for losses occasioned by delays or the changes of the owner. It is somewhat difficult for us to find a dispute "in connection with this contract" which involves an issue that is not even mentioned in the contract. We have some difficulty in finding an agreement to arbitrate a subject matter that is not within the contract terms.

In Exercycle Corp. v. Maratta, 9 NY2d 329, 174 NE2d 463, the language of the contract was " 'any dispute arising out of or in connection with this agreement shall be settled by arbitration. . . .' " It will be noted that this language is almost precisely what we here construe and at first blush it would seem to be that it is all inclusive language. After announcing the proposition that parties to a contract may agree, if they will, that any and all controversies growing out of it may be submitted to arbitration and that such agreements will be enforced, then the court notes five exceptions to the rule and thus effectively closes the gate on the all inclusive nature of the language. An arbitration conducted under a contract which is invalid, unenforceable, irrevocable or which is competely silent on the question of arbitration is a nullity, the tribunal conducting the arbitration self-constituted, its decisions powerless and an award an act of usurpation. Finsilver, Still & Moss v. Goldberg, Maas & Co., 253

230

NY 382, 171 NE 579. The legal existence of the arbitration tribunal and the issue it is to decide depends on the contract. When the contract is silent on the issues sought to be arbitrated, there is no contract and it does not lie within the province of this or any other court to make that contract or to extend that contract by implication or by construction. And as we read Flood, it so holds. In the case at bar, it seems clear that the provision in ¶ 7 of the General Conditions for arbitration is limited to matters contained in ¶ 5 relating to the architects' supervision in connection with the quality of the work, its acceptability and the meaning of the specifications. In addition a specific provision takes care of contractors' expense for alterations but nowhere is damages for delay occasioned by the owner mentioned. There is "no coverage" in the contract for such an eventuality.

So far as Blades and Carson-Payson are concerned, the disposition thus made of the question of arbitration disposes of the issues raised by them. If there was no agreement to arbitrate the issue sought to be submitted in the General Conditions, there can be no arbitration by the incorporation by reference of such General Conditions in their contract. We therefore deem it unnecessary to discuss any question of waiver, any question of priority of liens or any question of performance of conditions precedent. The trial court correctly stayed arbitration for the very cogent reason that the subject matter proposed to be arbitrated was not an issue encompassed within the contract of the parties. Accordingly, the judgment of the trial court should be and it is hereby affirmed.

Affirmed.

TRAPP, P. J. and CRAVEN, J., concur.