(No. 64821.—

DONALDSON, LUFKIN & JENRETTE FUTURES, INC., Appellee, v. EDWIN C. BARR *et al.* (The Board of Trade of the City of Chicago, Appellant).

*Opinion filed October 20, 1988.*

436

Kirkland & Ellis, of Chicago (John E. Angle and Robert S. Steigerwald, of counsel), and Scott E. Early and Pamela Klein-Kurland, of Chicago, for appellant.

Eugene R. Wedoff, of Jenner & Block, of Chicago, for appellee.

JUSTICE RYAN delivered the opinion of the court:

This case involves the arbitrability of a dispute arising under a contract of employment between the plaintiff, Donaldson, Lufkin & Jenrette Futures, Inc. (DFI), a commodity futures broker, and defendant Edwin C. Barr. Following the cessation of his employment, Barr filed a demand upon DFI for certain payments and also filed a request for arbitration with the Chicago Board of Trade (CBOT). DFI countered with a suit in the circuit court of Cook County to stay the arbitration proceedings and for declaratory judgment. The circuit court denied the request of DFI for a stay and directed that the arbitrator should determine whether the issue involved is ar-

bitrable. The appellate court held that the trial court should initially determine the arbitrability question and remanded the case to the trial court for an evidentiary hearing on whether the compensation Barr claims stems from profits generated by trading on the CBOT. 151 Ill. App. 3d 597.

The plaintiff, DFI, maintained an office in Chicago during the relevant time period. In 1983, DFI hired defendant Edwin C. Barr as a senior member of the executive committee of its board of directors. Barr's responsibilities included the supervision of DFI managers, account executives, and managing DFI's operations (through floor managers) on the trading floors of the five commodity exchanges, of which the CBOT was one. In consideration, Barr was given a $90,000 salary, the use of a car, as well as certain percentages for generating new business and of the general profits of the business. DFI also provided Barr with a membership on the CBOT.

In 1985, Barr ceased working for DFI and sent a letter to DFI demanding more than $500,000 in additional employment compensation and expense reimbursement. When DFI did not comply with Barr's demand for payment, he sought arbitration before the CBOT. In Barr's demand for arbitration, he set forth four claims against DFI: (a) a $50,000 claim for severance pay; (b) a claim in excess of $419,000 for a bonus based on the operating income generated by the Chicago office from 1983 to 1985; (c) a $138,600 claim for bonuses arising from recruiting other officers and employees to DFI; and (d) a claim for approximately $1,100 for unpaid expense vouchers. The CBOT then set a date for the arbitration hearing in December 1985, pursuant to CBOT Rule 600.00. Rule 600.00 provides:

"*Any controversy* between parties who are members and *which arises out of the Exchange business of such parties* shall, at the request of any such party, be submitted to arbitration in accordance with regulations prescribed by the Board. Every member, by becoming such, agrees to arbitrate all such disputes with other members in accordance with this Rule and the regulations prescribed by the Board pursuant to this Rule, and further agrees and obligates himself to abide by and perform any awards made thereunder." (Emphasis added.)

In response, on December 12, 1985, DFI filed in the circuit court of Cook County an application for the stay of arbitration proceedings demanded by Barr. DFI asserted that it had not agreed to arbitrate any dispute in its employment agreement with Barr. Further, DFI claimed that Rule 600.00 was inapplicable to the claims in Barr's demand for arbitration because those claims arose out of Barr's employment relationship with DFI, and not out of business that Barr or DFI transacted at the CBOT.

DFI also filed a declaratory judgment action in the circuit court of Cook County, in which it alleged, as to each of Barr's claims: (a) Barr is entitled to no severance pay, because he resigned voluntarily; (b) Barr is not entitled to any additional compensation in commissions based on operating income, because, when all relevant expenses (including allocations for centralized services) are taken into consideration, the income from the office was not sufficient to generate commissions greater than the guaranteed payments of $320,000 actually made to Barr; (c) Barr is not entitled to recruitment bonuses both because he did not recruit the personnel claimed in the demand letter, and because the amount to which he would have been entitled if he had recruited them would not have exceeded his guaranteed payments; and (d) DFI

is aware of no proper expense vouchers submitted by Barr which have not been paid.

The CBOT was granted leave to intervene as a party defendant by the circuit court, and asserted that the question of arbitrability in unclear cases should be delegated to the arbitrator for determination. The trial court held that a court should interfere only when it is clear that the matter is not arbitrable. The trial court concluded that in unclear cases the matter should be directed to arbitration for the arbitrator to determine his own jurisdiction. Accordingly, the trial court denied the stay of arbitration because it was not clear whether the controversy arose out of exchange business. DFI then filed a notice of interlocutory appeal from the denial of its application for a stay.

As noted above, the appellate court, with one justice dissenting, reversed the order of the trial court and remanded with instructions that the trial court hold an evidentiary hearing to determine whether the alleged profits could be directly traced to activities on the Chicago Board of Trade. (151 Ill. App. 3d 597.) The appellate court held that the plain language of section 2(b) of the Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, par. 102(b)) requires the trial court to make the initial decision of arbitrability as a matter of law. Section 2(b) of the Illinois Uniform Arbitration Act provides:

> "On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. That issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration." (Ill. Rev. Stat. 1985, ch. 10, par. 102(b).)

Our act substantially follows the uniform act promulgated by the National Conference on Uniform State

Laws, adopted in 1955. Section 2(b) of our act is section 2(b) of that uniform act.

The appellate court noted that the majority view among the appellate court districts in this State is that the trial court should decide whether an agreement to arbitrate exists. (See, *e.g.*, *Board of Trustees of Community Colleges District 508 v. Cook County College Teachers Union, Local No. 1600* (1985), 139 Ill. App. 3d 617; *Lester Witte & Co. v. Lundy* (1981), 98 Ill. App. 3d 1100; but see *School District No. 46 v. Del Bianco* (1966), 68 Ill. App. 2d 145.) The panel similarly noted that the most recent cases in the collective-bargaining context, as well as the commercial context, require the courts to initially determine the arbitrator's jurisdiction. Finally, the appellate court noted that decisions by the Seventh Circuit Court of Appeals implicitly support the view that the judiciary makes this initial determination. (See, *e.g.*, *Gault v. Libbey-Owens-Ford Glass Co.* (7th Cir. 1967), 376 F.2d 711.) The court concluded that Rule 600.00 covered business which is exchange related, but did not necessarily have to specifically be concerned with trading on the exchange, and remanded for an evidentiary hearing as indicated above.

The respondent, DFI, asserts that the appellate court's ruling is supported by the plain language of the statute. DFI contends that when there is a substantial dispute as to whether the parties agreed to arbitrate a particular claim, section 2(b) directs that the court "shall" hear the matter and render a decision, either for or against arbitration. (See Ill. Rev. Stat. 1985, ch. 10, par. 102(b); see also *Grane v. Grane* (1985), 130 Ill. App. 3d 332, 345.) DFI asserts that the use of the word "shall" is mandatory and requires a trial court to determine arbitrability without undue delay or unnecessary procedure. DFI notes that the majority of appellate

court decisions considering the issue have held that the trial court should resolve the arbitrability question. See, e.g., *J & K Cement Construction Co. v. Montalbano Builders, Inc.* (1983), 119 Ill. App. 3d 663; *Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.* (1969), 109 Ill. App. 2d 224.

Additionally, DFI asserts that the purpose of arbitration, efficient and economical resolution of disputes, would be defeated if in a section 2(b) proceeding the trial court initially deferred to the arbitrator on the arbitrability issue. (See, e.g., *Board of Trustees of Junior College District No. 508 v. Cook County College Teachers Union, Local 1600* (1980), 87 Ill. App. 3d 246, 252.) According to DFI, deferral of the arbitrability question could lead to the absurd result of three separate determinations. First, the section 2 motion to compel or stay arbitration; second, the arbitrator's determination of the arbitrability issue; and third, the section 12 (Ill. Rev. Stat. 1985, ch. 10, par. 112) motion to vacate the award of the arbitrator. (See also Kalevitch, *Arbitrability: The Uniform Arbitration Act in Illinois,* 4 Loy. U. Chi. L.J. 23, 33 (1973).) Section 12 of the Act provides grounds for vacating awards of arbitrators. Sections 12(a)(3) and (a)(5) (Ill. Rev. Stat. 1985, ch. 10, pars. 112(a)(3), (a)(5)) will be referred to later in this opinion. Finally, DFI asserts that none of Barr's claims arose out of the "Exchange business" between Barr and DFI but out of the contract of employment and, therefore, a remand for hearing is not necessary.

The CBOT, as petitioner, urges this court to follow the rationale of the dissenting justice in the appellate court, who concluded that if a reasonable doubt exists as to whether the matter is arbitrable, the court should defer the issue of arbitrability to the arbitrator initially, because a contrary ruling would render section 12 (regard-

ing circumstances where the court should vacate awards by arbitrators) meaningless. (151 Ill. App. 3d at 606-07 (Jiganti, J., dissenting); see also *Roosevelt University v. Mayfair Construction Co.* (1975), 28 Ill. App. 3d 1045.) The petitioner further maintains that the appellate court's reasoning is contrary to the public policy favoring arbitration because the trial court would have to conduct a full-blown trial to determine whether a dispute is arbitrable.

Finally, the CBOT asserts that although preexisting expertise has never been a prerequisite for arbitrators, the relationship between commodity trading and Barr's compensation formula could cause the expertise of the arbitrator to be crucial. Similarly, the petitioner contends that the CBOT arbitrators are uniquely qualified to make initial determinations of whether the instant claims fall within the scope of "Exchange business." Accordingly, the petitioner asserts, the trial court would benefit because it would have the record from arbitration and, therefore, could dispose of the issue of the arbitrability issue more speedily.

As noted, the Illinois Uniform Arbitration Act, enacted in 1961 (Ill. Rev. Stat. 1985, ch. 10, par. 101 *et seq.*), is substantially the Uniform Arbitration Act promulgated by the National Conference of Commissioners on Uniform State Laws in 1955. (*Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 93.) The Act embodies a legislative policy favoring enforcement of agreements to arbitrate future disputes. (Ill. Rev. Stat. 1985, ch. 10, par. 101; see also Pirsig, *Some Comments on Arbitration Legislation and the Uniform Act*, 10 Vand. L. Rev. 685, 691 (1957) (hereinafter cited as *Comments on the Uniform Act*).) Accordingly, it empowers courts, upon application of a party, to compel or stay arbitration, or to stay court action pending arbitration. (Ill.

Rev. Stat. 1985, ch. 10, par. 102.) In such a proceeding the court is confronted with the issue of whether there is an agreement to arbitrate the subject matter of a particular dispute. (*Lester Witte & Co. v. Lundy* (1981), 98 Ill. App. 3d 1100, 1104.) Inseparable from this issue is the question of who decides arbitrability—the court or the arbitrator.

Both the appellate court and DFI have suggested that the majority of decisions in the appellate court in this State have held that the courts must determine, in the first instance, whether a particular controversy is arbitrable under the agreement. The cases relied upon do not lend themselves to such simple categorizing. In some cases, the arbitration agreements were very specific and the courts simply decided there was or was not an agreement to arbitrate the particular question. In other cases, the arbitration agreements were more general in nature, and in still other cases, the arbitration agreements were extremely broad. The broader arbitration agreements have been referred to in the cases and in literature as being "generic" arbitration agreements. In some of the cases involving the broader agreements, the courts simply borrowed language from cases involving more specific issues, in which the courts had asserted the court's authority to declare what was and what was not arbitrable. Therefore, a resolution of the issues before us involves more than a simple headcount of judicial decisions in which the courts have declared whether a particular issue was arbitrable within the arbitration agreement involved. In fact, as demonstrated by the conclusion we reach in this case, there are areas where arbitrability may properly be determined by the court, and there are areas where the court, on the question of arbitrability, must defer to the arbitrator. Again, as demon-

strated by this opinion, both situations may be present in the same case.

"Generally, the nature and extent of an arbitrator's power will depend upon what the parties agree to submit to arbitration." (*Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412, 419.) Where the language of the arbitration agreement is clear, and it is apparent that the dispute sought to be arbitrated falls within the scope of the arbitration clause, the court should decide the arbitrability issue and compel arbitration. (See, *e.g., Roosevelt University v. Mayfair Construction Co.* (1975), 28 Ill. App. 3d 1045, 1051; *Gold Coast Mall, Inc. v. Larmar Corp.* (1983), 298 Md. 96, 103-04, 468 A.2d 91, 95.) Similarly, if it is apparent that the issue sought to be arbitrated is not within the ambit of the arbitration clause, the court should decide the arbitrability issue in favor of the opposing party, because there is no agreement to arbitrate. (See, *e.g., Flood*, 41 Ill. 2d at 93; *Mayfair Construction Co.*, 28 Ill. App. 3d at 1051.) "Thus, the arbitrability issue emerges as essentially one of giving effect to the parties' expressed intention about the use of arbitration." (Henderson, *Contractual Problems in the Enforcement of Agreements to Arbitrate Medical Malpractice*, 58 Va. L. Rev. 947, 972 (1972).) The paramount factor in determining the parties' intention is the scope of the arbitration clause in the contract.

The broadest arbitration clauses typically provide that "any claim or controversy arising out of this agreement" is to be submitted to arbitration. Courts that have interpreted these broad clauses have dealt with the arbitrability issue in several ways. *E.g., United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 584, 4 L. Ed. 2d 1409, 1418-19, 80 S. Ct.

1347, 1354 (court decides arbitrability and all issues are arbitrable unless expressly and specifically excluded); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* (1985), 473 U.S. 614, 627, 87 L. Ed. 2d 444, 456, 105 S. Ct. 3346, 3354 (court determines arbitrability but parties' intentions are generously construed as to issues of arbitrability); *Goldberg v. Donaldson, Lufkin & Jenrette Securities Corp.* (N.D. Ga. 1986), 650 F. Supp. 222, 225 (court decides arbitrability and any doubts concerning scope should be resolved in favor of arbitration because Federal policy strongly favors arbitration); *Exercycle Corp. v. Maratta* (1961), 9 N.Y.2d 329, 334, 174 N.E.2d 463, 464, 214 N.Y.S.2d 353, 355 (if parties broadly agree to arbitrate "it is for the arbitrators to decide what the agreement means").

A problem arises, however, when the parties broadly agree to arbitrate and it is still unclear whether the subject matter of the dispute falls within the scope of the arbitration agreement. In States which have adopted the Uniform Arbitration Act, some courts have held that when the issue of contractual intention is reasonably debatable, the arbitrability question is to be determined initially by the arbitrator. (See, *e.g., Roosevelt University v. Mayfair Construction Co.* (1975), 28 Ill. App. 3d 1045, 1051-52; *School District No. 46 v. Del Bianco* (1966), 68 Ill. App. 2d 145, 155; *University of Alaska v. Modern Construction, Inc.* (Alaska 1974), 522 P.2d 1132, 1137; *Gold Coast Mall, Inc. v. Larmar Corp.* (1983), 298 Md. 96, 468 A.2d 91; *Layne-Minnesota Co. v. Regents of the University of Minnesota* (1963), 266 Minn. 284, 123 N.W.2d 371. But see *Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.* (1969), 109 Ill. App. 2d 224, 230.) The seminal case that held that the arbitrator should initially decide the arbitrability issue in unclear cases was *Layne-Minnesota Co. v. Regents of the*

*University of Minnesota* (1963), 266 Minn. 284, 123 N.W.2d 371. In stating the rationale underlying this conclusion, the supreme court of Minnesota said:

"[T]he records of the National Conference of Commissioners on Uniform Laws, and particularly the writings of the chairman of the subcommittee that undertook the drafting of the act, disclose that the problem of judicial interference with the question of arbitrability was intended to be governed by section 2 of the Uniform Act ·  ***. Apart from these writings, the language of [section 2] expressly authorizes a court to interfere and protect a party from being compelled to submit to arbitration proceedings where no arbitration agreement exists, either in fact or because the controversy sought to be arbitrated is not within the scope of the arbitration clause of the contract. Such construction does no violence to the purpose of the act since a party should not be compelled to go to the expense, trouble, and hazard of the arbitration process when he has clearly not agreed to do so. The difficulty lies in applying this rule when the intention of the parties is not clearly expressed. Where the parties are in conflict as to the scope of the provision for arbitration, and the question of the parties' intention as to such scope is reasonably debatable, the problem arises as to whether the court or the arbitrators shall decide the question. *We believe in such cases the rule should be, and we hold, that the issue of arbitrability be initially determined by the arbitrators ***. Such a rule is consistent with the purpose and objectives of the Uniform Act ***.*" (Emphasis added.) *Layne-Minnesota Co.*, 266 Minn. at 290-91, 123 N.W.2d at 376-77.

We are persuaded that the position in *Layne-Minnesota*, which has been followed in some of the appellate court decisions in this State (*e.g., Mayfair Construction Co.*, 28 Ill. App. 3d at 1051), is the approach that was within the contemplation of the drafters of the Uniform Arbitration Act. Thus, when the language of an arbitration clause is broad and it is unclear whether the subject

matter of the dispute falls within the scope of arbitration agreement, the question of substantive arbitrability should initially be decided by the arbitrator. *Cf. Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91 (narrow arbitration clauses will not be extended by construction or implication).

To construe section 2(b) to require the trial court to determine the arbitrability issue in unclear cases, as DFI contends the plain language mandates, would be destructive of the purpose of arbitration. "Whether the party seeking arbitration is right or wrong is a question of contract application and interpretation for the arbitrator, not the court, and the court should not deprive the party seeking arbitration of the arbitrator's skilled judgment by attempting to resolve the ambiguity." *Gold Coast Mall, Inc. v. Larmar Corp.* (1983), 298 Md. 96, 107, 468 A.2d 91, 97.

Additionally, the views expressed by Maynard E. Pirsig, one of the drafters of the uniform act, support the notion that in unclear cases the arbitrator should initially determine the arbitrability issue:

> "All in all it is a very simple act. Its essential purpose is to make an agreement to arbitrate effective whether relating to existing or future disputes. For this purpose it enlists the aid of the court by a simple non-technical and summary procedure which safeguards the parties against claims for arbitration not warranted by their agreement and which effectively enforces the agreement to arbitrate as made and the award made in conformity with the agreement." (*Comments on the Uniform Act*, 10 Vand. L. Rev. at 691.)

While we acknowledge that initially deferring to the arbitrator in unclear cases may occasionally hinder some of the reasons for arbitration, speed and inexpense, we note that parties are free to state in their contract and arbitration agreement that all questions regarding arbi-

trability should be decided by a court. Similarly, we note that under the Federal Arbitration Act, it has been held that the primary purpose of the Act is to enforce parties' agreements to arbitrate, "even if the result is 'piecemeal litigation.' " *Dean Witter Reynolds Inc. v. Byrd* (1985), 470 U.S. 213, 221, 84 L. Ed. 2d 158, 165, 105 S. Ct. 1238, 1242-43; *Dickinson v. Heinhold Securities, Inc.* (7th Cir. 1981), 661 F.2d 638, 644.

Finally, and most importantly, initially deferring to the arbitrator in unclear cases was the intent of the drafters of the Uniform Arbitration Act. As previously noted, the Illinois Uniform Arbitration Act is substantially similar to the National Conference of Commissioners' Uniform Arbitration Act. Because there is no legislative history on the Illinois Arbitration Act, it is proper to consider " 'the records of the National Conference of Commissioners on Uniform Laws, and particularly the writings of the chairman of the subcommittee that undertook the drafting of the Act' " in construing the Illinois act. *Del Bianco*, 68 Ill. App. 2d at 154, quoting *Layne-Minnesota Co. v. Regents of the University of Minnesota* (1963), 266 Minn. 284, 290, 123 N.W.2d 371, 376.

It was intended, under the Uniform Arbitration Act, on an application to compel or stay arbitration, under section 2 of the Act, that the sole question for the court to determine is whether there was an agreement to arbitrate. (*Comments on the Uniform Act,* 10 Vand. L. Rev. at 705.) If it is obvious that there was an agreement to arbitrate the dispute in question, that is, if the dispute clearly falls within the scope of the arbitration agreement, the court should order arbitration. If it is clear that it does not, arbitration should be refused. (*Comments on the Uniform Act,* 10 Vand. L. Rev. at 694.) The drafters of the uniform act intended, in unclear

cases and in the face of an omnibus arbitration clause, that the court should initially defer the arbitrability question to the arbitrator:

> "An order to that effect will not preclude a later objection to the award that it is so far removed from any reasonable interpretation of the agreement that the arbitrator went beyond his powers." (*Comments on the Uniform Act*, 10 Vand. L. Rev. at 695.)

An objection to an award would be made under section 12 of the Act. Section 12(a)(3) provides as a ground for vacating an award:

> "The arbitrators exceeded their powers." (Ill. Rev. Stat. 1985, ch. 10, par. 112(a)(3).)

Section 12(a)(5) provides as a ground for vacating the award:

> "There was no arbitration agreement and the issue was not adversely determined in proceedings under Section 2 and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by the circuit court is not ground for vacating or refusing to confirm the award." (Ill. Rev. Stat. 1985, ch. 10, par. 112(a)(5).)

*Comments on the Uniform Act* continues:

> "Until he [the arbitrator] has made his award, it cannot be known whether he will adopt an impossible construction. Consideration of that question must, therefore, be deferred until the award has been rendered." (*Comments on the Uniform Act*, 10 Vand. L. Rev. at 696.)

> "It is the duty of the court under subdivision (3) [uniform act section 12(a)(3) (Ill. Rev. Stat. 1985, ch. 10, par. 112(a)(3))] to measure the award against the powers of the arbitrator conferred by the agreement." (*Comments on the Uniform Act*, 10 Vand. L. Rev. at 706.)

Thus, it was the express intention of the drafters of the Uniform Arbitration Act that the arbitrator initially interpret the arbitration clause in unclear cases, subject to

the ultimate determination of arbitrability by the court. See Ill. Rev. Stat. 1985, ch. 10, pars. 12(a)(3), (a)(5).

Applying the above reasoning to the facts of our case, Barr's claim for severance pay, his claim for unpaid expenses, and the issues involved relating to these claims clearly arose out of his contract of employment with DFI and clearly did not "arise out of Exchange business," as required by the arbitration agreement contained in Rule 600.00 of the Chicago Board of Trade. The trial court therefore should not have referred these matters to arbitration. These claims should be determined by the court.

However, it is unclear whether Barr's claim for compensation, based upon 15% of the income generated by his office and his claim for an amount equal to 5% of the gross first-year commissions produced by any recruits he brought to the company, arose out of exchange business at the CBOT or simply arose out of the employment contract between Barr and DFI. It is precisely because it is unclear whether these claims arose out of the employment contract or exchange business that the arbitrator must initially determine the arbitrability issue. The arbitrator must also determine to what extent Barr's claims arose out of exchange business at the CBOT because the CBOT was only one of five exchanges with which DFI did business and whose accounts could be handled by Barr. Thus, the arbitrator should initially determine whether these claims, in whole or in any part, are arbitrable because they arose out of exchange business at the CBOT.

The judgment of the appellate court reversed the trial court and remanded for an evidentiary hearing on whether the alleged profits could be directly traced to activities with the Chicago Board of Trade. The effect of this holding appears to be that the trial court erred in referring the severance pay and expense reimbursement issues to the arbitrator. To this extent, the judgment of

the appellate court is affirmed. To the extent that the appellate court held that the arbitrability of the other two issues is a question to be decided by the trial court, the judgment of the appellate court is reversed. The cause is remanded to the circuit court of Cook County.

*Appellate court affirmed in part*
*and reversed in part;*
*circuit court reversed in part*
*and affirmed in part;*
*cause remanded.*

JUSTICE STAMOS took no part in the consideration or decision of this case.

JUSTICE WARD, dissenting:

I must, with respect, dissent from the majority's holding that where, in a broad arbitration clause, "it is unclear whether the subject matter of the dispute falls within the scope of the arbitration agreement, the question of substantive arbitrability should initially be decided by the arbitrator." 124 Ill. 2d at 447-48.

First, the language of our Arbitration Act is to me indisputably clear and does not permit, much less require, interpretation. The Act, which is set out in the majority's opinion, states that when there is a substantial and bona fide dispute as to whether the question involved is one for arbitration the issue shall be decided by the court. Thus, in the unclear cases, the Act clearly directs that the question be resolved by the court. This, of course, is consistent with the legal fundamental that the interpretation of contracts is for the court. To say that in any event the court may ultimately interpret the agreement and decide the disputed question of arbitrability cannot justify the delay and additional expense in resolving the uncertainty.

I would observe that the decision upon which the majority principally relies was handed down 25 years ago.

Since then the greater number of courts, State and Federal, that have addressed the question have held that arbitrability is a matter of law to be initially decided by the court. I would note also that the comment on the Uniform Arbitration Act that the majority cites (Comment, *Some Comments on Arbitration Legislation and the Uniform Arbitration Act*, 10 Vand. L. Rev. 685) was published in 1957. That was only two years following the promulgation of the Act and prior to the development of a body of decisional law on the question of whether in unclear cases an arbitrability question should first be referred to the arbitrator or to the court.

I believe that a later law review comment on the Federal Arbitration Act and arbitrability reflects a contrary and preferable view:

> "Completely deferring the issue of arbitrability to the arbitrator when a broad arbitration clause is used has logical appeal because arbitrability is a matter of contract interpretation. The parties' use of a broad arbitration clause undeniably demonstrates their intent to send disputes concerning contract interpretation to arbitration. Sending the question of arbitrability to the arbitrator, however, violates the determination that [t]he question of whether a dispute is "arbitrable" is inescapably for the court.' [*United Steelworkers of America v. American Manufacturing Co.* (1960), 363 U.S. 569, 571, 4 L. Ed. 2d 1432, 1433, 80 S. Ct. 1363, 1364.] In light of this policy, it is questionable to assert that use of a broad arbitration clause mandates referring the issue of arbitrability to the arbitrator without any further judicial scrutiny." Comment, *Arbitrability of Disputes Under the Federal Arbitration Act*, 71 Iowa L. Rev. 1137 (1986).

Recent decisions of State courts that disputes as to the scope of arbitration are matters of contractual interpretation and thus matters of law to be determined in the first instance by the court include:

*Flynn v. Town of Newington* (1984), 2 Conn. App. 230, 235, 477 A.2d 1028, 1031;

*Poire v. Kaplan* (D.C. App. 1985), 491 A.2d 529, 533;

*Cape Elizabeth School Board v. Cape Elizabeth Teachers Association* (Me. 1983), 459 A.2d 166, 168;

*Federal Kemper Insurance Co. v. American Bankers Insurance Co.* (1984), 137 Mich. App. 134, 139, 357 N.W.2d 834, 837;

*Kelsey & Son, Inc. v. Architectural Openings, Inc.* (Fla. 1986), 484 So. 2d 610, 611;

*Gibbons-Grable Co. v. Gilbane Building Co.* (1986), 34 Ohio App. 3d 170, 172, 517 N.E.2d 559, 561;

*Demers Nursing Home v. R. C. Foss & Sons* (1982), 122 N.H. 757, 759-60, 449 A.2d 1231, 1232;

*Milwaukee Police Association v. City of Milwaukee* (1983), 113 Wis. 2d 192, 198, 335 N.W.2d 417, 420;

*United Paperworkers International Union v. Chase Bag Co.* (1981), 222 Va. 324, 327-28, 281 S.E.2d 807, 809;

*Hessler v. Columbia Gas Transmission Corp.* (1983), 318 Pa. Super. 302, 306, 464 A.2d 1354, 1356;

*In re W. A. Botting Plumbing & Heating Co. v. Constructors Pamco* (1987), 47 Wash. App. 681, 684, 736 P.2d 1100, 1102.

The position of the Supreme Court under the Federal Arbitration Act, to which the majority refers, on the question is clear. In *AT & T Technologies, Inc. v. Communications Workers* (1986), 475 U.S. 643, 89 L. Ed. 2d 648, 106 S. Ct. 1415, the Court's opinion began:

"The issue presented in this case is whether a court asked to order arbitration of a grievance filed under a collective-bargaining agreement must first determine that the parties intended to arbitrate the dispute, or whether

that determination is properly left to the arbitrator." (475 U.S. at 644, 89 L. Ed. 2d at 653, 106 S. Ct. at 1416.)

The Court concluded:

> "It is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning layoffs predicated on a 'lack of work' determination by the Company. If the court determines that the agreement so provides, then it is for the arbitrator to determine the relative merits of the parties' substantive interpretations of the agreement. It was for the court, not the arbitrator, to decide in the first instance whether the dispute was to be resolved through arbitration." (475 U.S. at 651, 89 L. Ed. 2d at 657, 106 S. Ct. at 1420.)

See also *Atkinson v. Sinclair Refining Co.* (1962), 370 U.S. 238, 241, 8 L. Ed. 2d 467, 465-66, 82 S. Ct. 1318, 1320-21; *International Union, UAW v. General Electric Co.* (8th Cir. 1983), 714 F.2d 830, 831; *Local Joint Executive Board of Las Vegas, Culinary Workers Union, Local 226 v. Royal Center, Inc.* (9th Cir. 1985), 754 F.2d 835, 838; *Life of American Insurance Co. v. Aetna Life Insurance Co.* (5th Cir. 1984), 744 F.2d 409, 413; *LaCourse v. Firemen's Insurance Co.* (3d Cir. 1985), 756 F.2d 10, 12; *Local 232, Allied Industrial Workers v. Briggs & Stratton Corp.* (7th Cir. 1988), 837 F.2d 782, 784; *Brotherhood of Teamsters Auto Truck Drivers, Local No. 70 v. Interstate Distributor Co.* (9th Cir. 1987), 832 F.2d 507, 509.

The majority's view that the arbitrator in close cases is to decide initially whether there should be arbitration may not be universally welcomed by arbitrators. Some may fear unjustified criticism that when they decide for arbitration they acted in self-interest. Some, apprehensive of criticism of this character, may be at least subliminally influenced to decide against arbitration when arbitration would have been proper.