BROOKFIELD-NORTH RIVERSIDE WATER COMMISSION, Plaintiff-Appellant, v. ABBOTT CONTRACTORS, INC., *et al.*, Defendants-Appellees.

First District (1st Division)   Nos. 1—92—1802, 1—92—2019 cons.

Opinion filed August 2, 1993.—Rehearing denied September 7, 1993.

Chapman & Cutler, of Chicago (James P. O'Brien and Robert M. Baratta, Jr., of counsel), for appellant.

O'Reilly, Cunningham, Norton & Mancini, of Wheaton (Thomas R. Weiler, of counsel), for appellee Abbott Contractors, Inc.

JUSTICE O'CONNOR delivered the opinion of the court:
This appeal stems from a dispute involving allegedly defective work performed during a public works project entitled "1987 Water Supply Improvements Projects A—Transmission Mains and Cross Connections" (project). In its complaint, plaintiff, Brookfield-North Riverside Water Commission (the Commission), alleged that defendant, Abbott Contractors, Inc. (Abbott), was responsible for the defective work. Ultimately, the circuit court granted Abbott partial summary judgment and ordered the parties to arbitration. The court also denied the Commission's motion for summary judgment. The Commission now challenges the propriety of those orders.

We reverse and remand.

On June 30, 1987, the Commission entered into a contract with Abbott, in which Abbott agreed to perform all the work and improvements for the project. The contract incorporated a separate document entitled "Specifications and Bidding Documents for Phase A—Transmission Mains and Cross Connection." These specifications

were prepared by the project engineer, Edwin Hancock Engineering Company (the engineer). The purpose of the project was to make a supplemental source of water available for the residents within the Commission's jurisdiction. Abbott completed the work on June 19, 1988, and received its final payment on August 13, 1988.

In February 1989, the Commission took water samples from the pipes after receiving complaints of oily, foul-smelling water from residents. These samples indicated that contaminants were in the water line, rendering it unsuitable. Three months later, the Commission had a "butterfly valve" in the line opened, and oil and other contaminants were found there as well. Chemical tests performed in June confirmed the presence of benzene in the water. On June 14, 1989, the Commission notified Abbott that its work was "defective" and "unacceptable" and, citing the contract's one-year warranty period, asked for compensation with regard to the cost of replacing and cleaning the unsuitable piping. Abbott responded with a denial that its work was defective. On July 14, 1989, the Commission submitted the dispute to the engineer. Upon notification of the submission, Abbott questioned the authority of the engineer to render a decision on completed work.

On August 11, 1989, the Commission wrote to the engineer requesting "additional time in which to submit *** data to and including October 14, 1989." On August 14, 1989, counsel for Abbott wrote to the engineer and again questioned the engineer's authority for undertaking review of the "dispute." Abbott asked that this "threshold issue" be resolved prior to any other determination and reserved the right to submit data if the dispute resolution was to proceed.

Apparently, the engineer's decision was rendered prior to the receipt of either Abbott's or the Commission's letters because, on August 11, 1989, the engineer, in a letter addressed to both parties, stated that the "resolution on our part of this dispute would be in accordance with Paragraphs 9.11 and 9.12" of the contract. After making several findings as to the cause of the contamination, the engineer concluded that Abbott should bear the "full responsibility" for the costs of removing the contaminants.

Four days later, the engineer notified both parties that it had received their requests for additional time after the completion of the dispute "resolution." In light of that fact, the engineer recommended that both the Commission and Abbott "take sufficient time to review the findings we have presented in our resolution dated August 11, 1989, after which a conference can be scheduled with

both parties and our office to discuss the items in dispute in further detail. At that time, if it can be shown, by either party, that there is additional qualified data available, or becoming available, to add support to its position and to justify a review of our resolution, a time extension can be granted to allow for this date [sic] to be submitted." Neither party availed itself of the opportunity to submit additional data to the engineer.

On February 1, 1990, the Commission filed its eight-count complaint, sounding in negligence and breach of contract, against Abbott. Relevant here is count I, which alleged that Abbott had failed to seek timely review of the engineer's decision, and as a result, was liable for the defective work as found by the engineer in its August 11, 1989, resolution of the dispute. The Commission sought court enforcement of the engineer's decision. On May 20, 1991, the Commission filed a motion for partial summary judgment on count I of the complaint. The affidavit of William F. Bucha, the president of the engineering firm affiliated with the project, was submitted to the court in support of the motion. In it, Bucha swore that the dispute between the Commission and Abbott was submitted to the engineer on July 14, 1989, and the engineer's decision was rendered on August 11, 1989. According to Bucha, the letter of August 11, 1989, "is the final, written decision of Hancock [the engineer] concerning the dispute between Abbott and the Commission."

On June 14, 1991, Abbott demanded a review of the engineer's decision by the American Arbitration Association (AAA). In its demand, Abbott sought a determination of whether the engineer was the proper party to resolve the dispute. Abbott later amended the demand to include determinations of all the claims raised by the Commission in its litigation. Meanwhile, in the circuit court, Abbott filed a motion to compel arbitration and stay proceedings in the case pending the resolution of the arbitration. Abbott also moved for cross partial summary judgment on count I of the complaint, contending that the engineer's decision of August 11, 1989, was neither valid nor final.

Following arguments on the motions, the circuit court granted Abbott's motion for partial summary judgment as to count I of the complaint, granted Abbott's motion to compel arbitration, and denied the Commission's motion for partial summary judgment as to count I of the complaint. In his ruling, the trial judge stated that he could not "accept the letter [of August 11, 1989] as final" because the engineer "didn't really grant Abbott its day in court." The Commission filed two timely notices of appeal. The first chal-

lenges that portion of the circuit court's order which compelled arbitration and stayed proceedings pending the resolution of the arbitration. The second notice of appeal challenges that portion of the circuit court's order which denied the Commission's motion for partial summary judgment as to count I and granted Abbott's cross-motion for summary judgment as to count I. This court granted the Commission's motion to consolidate the appeals on July 7, 1992.

The Commission maintains that the circuit court erred in denying its motion for partial summary judgment. It asserts that the dispute between the parties properly was submitted to the engineer under the contract, that Abbott should have appealed the engineer's decision to the AAA under the contract's 30-day provision, and that because Abbott did not do so, it is too late for the matter to be sent to arbitration. Abbott responds that the engineer did not have the authority to render the decision. Moreover, assuming it did have authority, Abbott insists that the engineer's letter is not a resolution of the dispute because the engineer subsequently allowed both parties to submit additional data. Abbott further contends that it timely sought arbitration.

Our analysis must begin with the determination of what was actually "disputed" by the parties. By letter dated June 14, 1989, the Commission charged Abbott with providing "defective," "faulty," and "deficient" work. The letter contained a detailed description of the work the Commission considered defective and cited the specifications of the contract in reference to the defective work. The letter concluded by requesting Abbott to bear the cost of the repair and replacement. On June 23, 1989, Abbott responded to the Commission's letter, denying that its work was "defective in any way." Had Abbott accepted the Commission's findings and agreed to bear the costs of repair, none of the ensuing events would have occurred. In view of these facts, it would appear that, as of June 23, 1989, the parties "disputed" whether the work was performed in a defective manner.

Having identified the dispute as one concerning defective work, this court must ascertain how the parties intended such disputes to be resolved. In so doing, we must look to the parties' contract, because the rights of the parties are governed by its terms. *Kohenn v. Plantation Baking Co.* (1975), 32 Ill. App. 3d 231, 336 N.E.2d 491.

The contract here provides that the "Contractor [Abbott] warrants and guarantees to OWNER and ENGINEER that all Work will be in accordance with the Contract Documents and will not be *defective*. All *defective* Work, whether or not in place, may be rejected."

(Emphasis in original.) The contract also provides for a "one year correction period" after completion in which Abbott was to repair, replace, or bear the cost of replacement for any work "found to be *defective.*" (Emphasis in original.) It should also be noted that the contract specifically states that the making and acceptance of final payment did not constitute a waiver of claims arising "from *defective* work *** [or] from failure to comply with the contract documents." (Emphasis in original.) Moreover, final payment to Abbott did not constitute "an acceptance of Work not in accordance with Contract Documents" and did not release Abbott from the obligation to perform the work in accordance with the contract documents. The contract identifies the engineer as the "initial interpreter of the requirements of the Contract Documents and judge of the acceptability of the work thereunder." To that end, the engineer was charged with the authority to disapprove or reject work which the engineer believed to be defective "whether or not the Work is fabricated, installed or completed."

Given this language and the fact that the dispute fell within the one-year warranty provision, the engineer, under the contract, had the authority to make an "initial" determination concerning the Commission's claims that Abbott's work was "defective" and failed to comply with the contract's documents. Accordingly, Abbott's arguments concerning the engineer's lack of authority must fail because the contract specifically provides the engineer with such authority with regard to work acceptability and without regard to the completion of the project.

The contract also sets forth the method by which the parties were to submit such "disputes" to the engineer for decision. Under section 9.11, the claimant must make its request for a "formal decision" "in writing," after which the engineer must "render" its decision "in writing within a reasonable time." In addition, the claimant is required to give "written notice" of its claim to the other party no later than 30 days after the occurrence of the event "giving rise thereto." The contract provides that written supporting data is to be submitted to the engineer and the "other party" within 60 days after such occurrence unless the engineer allows for an additional time period. Section 9.12 of the contract makes the "rendering of a decision" by the engineer, pursuant to section 9.11, a "condition precedent to any exercise by OWNER or CONTRACTOR of such rights or remedies as either may otherwise have under the Contract."

As noted previously, Abbott's denial of defective work on June 23, 1989, was the "occurrence" which gave rise to the claim at issue here. On July 14, 1989, the Commission submitted its written claim to the engineer, well within the 30-day period required under the contract. The Commission also provided Abbott with written notice of the claim within the requisite time period. The record indicates that neither party availed itself of the 60-day period within which data was to be submitted. Under the contract, August 23, 1989, would have been the last day on which data could be submitted. On August 11, 1989, following a telephone conversation with Abbott's counsel, counsel for the Commission sent the engineer a letter requesting additional time to and including October 14, 1989, in which to submit additional data. Specifically, the letter stated that "unless the undersigned learns from you otherwise by 5 p.m., Monday August 14, 1989, we will assume that you will allow the extension of time as requested herein." On August 14, 1989, Abbott wrote to the engineer, acknowledging the Commission's extension request of August 11, 1989. Once again, Abbott questioned the engineer's authority to hear the matter and requested that that issue be resolved initially. The letter went on to "reserve the right to submit additional data relevant to the proceeding."

The engineer rendered a decision on the dispute on August 11, 1989, apparently unaware of the parties' concerns. In his letter, the engineer stated that "this *resolution* on our part of this dispute would be in accordance with Paragraphs 9.11 and 9.12" of the contract and further stated that "[t]he presence of materials *** in the transmission main and the flooding of the pipe trench *** are factors supporting our *conclusion* that the high degrees of concentration of certain volatile compounds found in the water *** are the result of these compounds entering the transmission main during the time of its installation." (Emphasis added.) The engineer's letter stated that it was "our *finding*" that Abbott bear the full responsibility for having the pipes cleaned. (Emphasis added.)

On August 15, 1989, the engineer, apparently in response to the parties' letters, recommended to both parties that they "take sufficient time to review the findings we have presented in our *resolution* dated August 11, 1989 after which a conference can be scheduled with both parties and our office to discuss the items in dispute in further detail. At that time, if it can be shown, by either party, that there is additional qualified data available to add support to its position and to justify a review of our *resolution*, a time extension can be granted." (Emphasis added.) Neither party took advantage

of the engineer's invitation. Moreover, no party submitted any data prior to the October 14, 1989, extension date mentioned in the Commission's letter to the engineer prior to the August 11 resolution.

Clearly, the wording of the engineer's letter of August 11, 1989, as underscored above, indicates the engineer considered its findings to be a "decision" "rendered" on the dispute in accordance with sections 9.11 and 9.12 of the contract. This is manifested by what was not stated in the engineer's letter of August 15, 1989. In that correspondence, the engineer *did not* withdraw its August 11, 1989, decision, but, rather, offered both parties the possibility of a "review" of the decision if either side could show that additional data justified such action. Neither party availed itself of this opportunity. With the favorable August 11 decision in hand, the Commission's inaction at this part of the proceedings is hardly surprising. Abbott's inaction, however, is inexplicable as the August 11 decision was unfavorable to it. Not only did that decision resolve the dispute regarding defective work against Abbott, but it also resolved the issue of the engineer's authority against Abbott. It should be noted that Abbott has continued to question that authority even in this court. Nevertheless, Abbott did not return to the engineer. This alone, however, is not fatal to Abbott's claims because Abbott did have one other avenue of recourse available under the terms of the contract.

Section 16.1 of the contract provides that all claims, disputes and other matters in question between the parties were to be decided by the AAA, subject to the limitations contained within article 16. The only such limitation relevant to this litigation is the following: "No demand for arbitration of any such claim, dispute or other matter will be made later than *thirty days* after the date on which the ENGINEER has rendered a written decision in respect thereof in accordance with paragraph 9.11. and the *failure to demand arbitration within said thirty day period shall result in ENGINEER's decision being final and binding upon the parties.*" (Emphasis added.)

No demand for arbitration was made by Abbott until June 14, 1991, almost two years after the engineer's decision was rendered. Although Abbott contends that the engineer's August 15 letter indicates that the dispute was still unresolved, the facts in the record do not support that argument. Abbott's actions following the receipt of the letter do not conform with those of a party seeking to present additional data. To this date, it does not appear that Abbott

has made any attempt to submit the additional data it maintained it had during the summer of 1989. We note that in its correspondence to the engineer, Abbott's counsel asked the engineer to resolve the "threshold issue" of the engineer's authority prior to resolving the dispute regarding the defective work: "If the binding resolution of this issue is that your firm is to proceed with the dispute resolution *** then we would reserve the right to submit additional data relevant to the proceeding." The engineer allowed for this in its letter of August 15, which offered the possibility of a review if additional data were available. Abbott, however, did nothing. Even more puzzling is Abbott's failure to challenge the engineer's authority to render the decision even though Abbott had a right to do so under the contract's terms. Under the plain language of the contract, as highlighted above, it was Abbott's failure to demand arbitration within a timely fashion that rendered the engineer's August 11 decision final and binding.

The Commission argues that Abbott's failure to make a timely demand for arbitration following the engineer's decision precludes arbitration.

Both parties correctly maintain that arbitration is a favored method of settling disputes. The object of arbitration is to achieve a final disposition of disputes in an easier, more expeditious, and less expensive manner than by litigation. (*Wilcox Co. v. Bouramas* (1979), 73 Ill. App. 3d 1046, 392 N.E.2d 198.) Nevertheless, our courts have recognized that a contractual right to arbitration can be waived like any other contractual right. (*Brennan v. Kenwick* (1981), 97 Ill. App. 3d 1040, 425 N.E.2d 439; *Gateway Drywall & Decorating, Inc. v. Village Construction Co.* (1979), 76 Ill. App. 3d 812, 395 N.E.2d 613.) Waiver will be found when a party's conduct has been inconsistent with the arbitration clause contained within the contract so as to indicate that the party has abandoned his right to arbitrate. *Brennan*, 97 Ill. App. 3d at 1042; *Gateway*, 76 Ill. App. 3d at 816.

Here, the contract specifically limits the time period within which demands for arbitration from the engineer's rulings can be made. Although the circuit court was concerned that Abbott did not "have its day in court," it appears that Abbott's own actions were the reason for any lack of hearing that occurred. The engineer gave Abbott the chance to submit data. Abbott failed to do so. Furthermore, under the arbitration clause within the contract, Abbott was free to take the engineer's resolution to the AAA, but it did not do so. These facts indicate that Abbott's conduct was inconsistent with

the arbitration provision within the contract. Accordingly, the circuit court incorrectly denied the Commission's motion for partial summary judgment as to this issue and erroneously granted Abbott summary judgment.

In view of the foregoing, the circuit court incorrectly granted Abbott's motion to compel arbitration. The sole issue before the court on such a motion is whether there is an agreement to arbitrate. (*Donaldson, Lufkin, & Jenrette Futures, Inc. v. Barr* (1988), 124 Ill. 2d 435, 530 N.E.2d 439.) Where the language of the arbitration agreement is clear, and it is apparent that the dispute sought to be arbitrated falls within the scope of the agreement, the court should decide the arbitrability issue and compel arbitration. (*Donaldson*, 124 Ill. 2d at 445.) If, however, it is apparent that the issue sought to be arbitrated is not within the ambit of the arbitration clause, the court must decide the arbitrability issue in favor of the party opposing arbitration because there is no agreement to arbitrate. (*Donaldson*, 124 Ill. 2d at 445.) The critical element in determining the parties' intention is the scope of the arbitration clause contained within the contract. *Donaldson*, 124 Ill. 2d at 445.

In the present case, the parties agreed to arbitrate all disputes, claims, and questions arising under the contract. However, this broad intent was limited with regard to disputes initially interpreted by the engineer. In those cases, arbitration demands were to be made within 30 days of that decision. If no demand was made, the decision became final and binding. As a result, the parties only agreed to arbitrate the engineer's decisions within 30 days. Those decisions outside the 30-day period, therefore, were specifically excluded by the parties. Accordingly, the circuit court erred in granting the motion to compel arbitration.

Therefore, the order of the circuit court granting Abbott's motion for partial summary judgment and for compelled arbitration is reversed and the circuit court's order denying the Commission's motion for partial summary judgment is reversed. The cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

MANNING, P.J., and BUCKLEY, J., concur.