2020 IL App (1st) 200840-U

FIFTH DIVISION
Order filed: November 6, 2020

No. 1-20-0840

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| DAN SULLIVAN and NEIL GOULDEN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellees, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CH 2740 |
| | ) | |
| RICARDO MARTINEZ, FRANCISCO CONNELL, | ) | |
| CHUHAK & TECSON, P.C., an Illinois Professional | ) | |
| Corporation, and WATER INTEGRATED TREATMENT | ) | |
| SYSTEMS, LLC, | ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | Alison C. Conlon, |
| (Ricardo Martinez, Defendant-Appellant). | ) | Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Justices Cunningham and Rochford concurred in the judgment.

**ORDER**

¶ 1     *Held*: We dismissed for lack of jurisdiction that part of the defendant's appeal challenging the circuit court's order compelling him to produce documents. We vacated the circuit court's order denying the defendant's motion to compel arbitration and remanded the matter with instructions because the arbitration clause is unclear as to whether the plaintiffs' claims are within its scope.

¶ 2     The defendant, Ricardo Martinez, appeals from orders of the circuit court of Cook County denying his motion to compel arbitration and granting a motion to compel production of certain documents in favor of the plaintiffs, Dan Sullivan and Neil Goulden. On appeal, Martinez argues that the circuit court erred in denying his motion to compel arbitration because the plaintiffs' claims against him fall within the scope of the governing arbitration clause. He also argues that the circuit court erred by granting the plaintiffs' motion to compel him to produce certain documents. For the reasons that follow, we dismiss that part of Martinez's appeal challenging the order compelling production of documents for lack of jurisdiction and vacate the order denying his motion compel arbitration and remand the matter to the circuit court with instructions.

¶ 3     The following facts are derived from the pleadings and exhibits of record.

¶ 4     The plaintiffs and Martinez are 3 of the 16 members of Water Integrated Treatment Systems, LLC (WITS), an Illinois limited liability company. On December 28, 2018, all members of WITS executed an operating agreement that governs their relationship and outlines their duties to each other. According to the operating agreement, the plaintiffs own a combined 43% of the Class A (voting) shares of WITS and roughly 87% of the Class B (non-voting) shares, whereas Martinez owns 51% of the Class A shares and is the sole manager of WITS.

¶ 5     Two clauses of the operating agreement are relevant for purposes of this appeal. First, section 13.4 of the operating agreement is an arbitration clause and it provides that, "[o]ther than equitable relief, any controversy or claim arising out of, or relating to, this Operating Agreement, or its breach, shall be settled by arbitration." Section 13.5 of the operating agreement is a clause titled "Equitable Relief" and it states the following:

"As the rights and obligations of the parties are unique and damages cannot be readily measured, irreparable damage would result in the event this Operating Agreement is not specifically enforced. The rights and obligations of the parties shall be enforceable in a court of equity by a decree of specific performance, and appropriate injunctive relief may be applied for and granted in connection therewith. Such remedy and all other remedies provided for in this Operating Agreement shall, however, be cumulative and not exclusive and shall be available in addition to any other remedies which any party may have under this Operating Agreement or otherwise."

¶ 6    On March 5, 2020, the plaintiffs filed a six-count complaint against Martinez, WITS's former corporate counsel, Francisco Connell, and Connell's law firm, Chuhak & Tecson, P.C. (Chuhak).[1] In count I, the plaintiffs' alleged that Martinez breached his fiduciary duties by refusing to provide them with access to WITS's books and records, improperly trying to obtain Minority Business Enterprise (MBE) certifications for WITS, attempting to force them to sell him their interest in WITS at a price lower than they could obtain through a third-party sale, and engaging in self-dealing. The plaintiffs sought the following relief: (1) an injunction to preclude Martinez from redeeming his shares of WITS, indemnifying himself, amending the WITS operating agreement, and directing further payments to himself, Connell, and Chuhak; (2) appointment of an interim receiver; (3) an order requiring Martinez to forfeit any compensation he received from WITS as a result of his breach of fiduciary duties; and (4) monetary and punitive damages "as may be appropriate." Count II sought to have Martinez furnish an accounting of WITS' affairs. Count III sought to have the court appoint an interim receiver to replace Martinez as manager. Count V

---

[1] Neither Connell nor Chuhak are parties to this appeal.

sought recission of the WITS operating agreement and an award of actual and punitive damages "as may be appropriate." Lastly, Count VI sought a declaratory judgment stating that the plaintiffs own a combined 59.5% interest in WITS and Martinez owns a 28% interest.[2]

¶ 7    On April 6, 2020, Martinez filed a motion to compel arbitration of the plaintiffs' claims against him, arguing that, pursuant to section 13.4 of the operating agreement, their claims must be settled by arbitration because they arise out of his alleged breach of the operating agreement and do not fall within the narrow exception of equitable relief as defined in section 13.5. According to Martinez, the only "equitable relief" that is not required to be settled by arbitration is a decree of specific performance as provided for in section 13.5.

¶ 8    As litigation was ongoing, a third party expressed an interest in purchasing WITS. In connection with the negotiation and evaluation of the potential sale, a due diligence data room was created as a digital repository for the related documents. On June 16, 2020, Martinez, as sole manager of WITS, executed a letter of intent with the third-party purchaser.

¶ 9    On June 29, 2020, the plaintiffs filed their response to Martinez's motion to compel arbitration and a supplement to an earlier motion for appointment of an interim receiver.[3] In their opposition to Martinez's motion to compel arbitration, the plaintiffs argued that their claims sought only equitable relief from Martinez, and therefore, by the plain language of the arbitration clause, their claims are not within its scope. They also argued that Martinez's narrow reading of sections 13.4 and 13.5 is not supported by the plain language. In the motion for appointment of an interim

---

[2] Count IV, which is not relevant here, is an allegation against Connell and Chuhak for aiding and abetting Martinez's breach of fiduciary duties.

[3] The record indicates that, on March 10, 2020, the plaintiffs filed a motion to appoint an interim receiver and for expedited discovery. However, a copy of that motion is not included in the record on appeal.

receiver, the plaintiffs argued that Martinez was unfit to continue in his role as manager and that court intervention was necessary to protect WITS and preserve its value. The plaintiffs asked the court to set an expedited discovery schedule, arguing that they were not in a position to make a full evidentiary showing concerning Martinez's improper actions because he denied them evidence by refusing to turn over WITS's records. The plaintiffs provided a list of documents they would seek to have produced, including, *inter alia*, WITS's books and records and all of the information contained in the due diligence data room being provided to the potential third-party purchaser.

¶ 10    On July 7, 2020, the parties appeared for the first time before the circuit court. Counsel for the plaintiffs reiterated their claims that Martinez had refused to provide them with documents they were entitled to as members of WITS, including WITS financial information and the documents in the data room related to the potential sale. Counsel for Martinez expressed a willingness to provide any information that the plaintiffs were entitled to but insisted that no formal request for documents had been submitted. The court then asked Martinez's counsel if there was any reason why the information in the data room could not be shared with the plaintiffs. Counsel stated that he could not answer because he was not sure what information was in the data room but that, "generally speaking, WITS and the prospective purchaser would not have an issue providing these documents."

¶ 11    The next day, on July 8, 2020, the court entered an order that: (1) entered and continued the plaintiffs' motion for appointment of an interim receiver and for expedited discovery; and (2) directed Martinez's counsel to review the information contained in the data room and confer with the plaintiffs' counsel regarding their requests for documents.

¶ 12     On July 14, 2020, the plaintiffs filed an emergency motion to compel, asking the court for an order directing Martinez to immediately produce copies of the following: (1) monthly balance sheets; (2) profit and loss statements; (3) general ledgers; (4) monthly statements for WITS credit card and bank accounts; and (5) all due diligence materials provided to the potential third-party purchaser of WITS. According to the plaintiffs, following the court's July 8, 2020 order, they provided Martinez's counsel with a list of the documents they wished to have produced, but Martinez refused the request on the grounds that the requested materials were voluminous and the request was "improper." In support of their motion, the plaintiffs attached Goulden's affidavit in which he averred that the letter of intent from the purchaser requires the completion of due diligence and execution of a definitive purchase agreement within sixty days. Goulden also estimated that he would need "at least a week" to review the information and reach an informed decision regarding the accuracy of any proposed net purchase price.

¶ 13     Martinez filed a response to the plaintiffs' emergency motion to compel on July 16, 2020, arguing that (1) the plaintiffs' claims should be referred to arbitration; (2) the situation did not amount to an emergency because there is no formal offer to purchase WITS; (3) the plaintiffs' request for WITS books and records should be directed to WITS, not Martinez; and (4) the plaintiffs are not entitled to the documents they seek because they have not provided a proper purpose.

¶ 14     On July 21, 2020, WITS filed an emergency petition to intervene pursuant to section 2-408(a)(2) of the Code of Civil Procedure (735 ILCS 5/2-408 (West 2018)), arguing that it should be allowed to intervene as a matter of right because WITS would be bound by any order against Martinez compelling the production of its books and records. WITS also argued that the court

should deny the plaintiffs' motion to compel, contending both that the current situation was not an emergency because WITS had yet to receive an offer of purchase and that the plaintiffs' request for books and records was procedurally deficient.

¶ 15    On July 30, 2020, the circuit court issued three written orders (1) denying Martinez's motion to compel arbitration; (2) granting WITS's motion to intervene; and (3) granting the plaintiffs' motion to compel Martinez to produce certain documents. Relevant here are the court's written orders regarding the motion to compel arbitration and the motion to compel Martinez to produce documents.

¶ 16    In its written order regarding Martinez's motion to compel arbitration, the court found that, because all of the plaintiffs' claims against Martinez sought equitable relief, they fall outside the scope of the operating agreement's arbitration clause, which mandates arbitration for all claims arising out of the agreement "other than equitable relief." The court also rejected Martinez's argument that section 13.5 limits the available non-arbitrable equitable relief to specific performance, finding no explicit limiting language in section 13.5. Rather, the court found that section 13.5, when read as a whole and in the context of the entire operating agreement, "undermines an argument that the non-arbitrable equitable remedies are limited to specific performance and injunctive relief."

¶ 17    In its written order granting the plaintiffs' motion to compel Martinez to produce documents, the court found that the information provided to a potential purchaser and information related to WITS expenditures were material to a member's decision on whether to vote in favor of a sale to that purchaser. It rejected the argument that the situation was not an emergency, finding that the 60-day time frame mandated by the letter of intent and the unrebutted claim of Goulden

regarding the time needed to review the documents constituted an emergency. The court was also unpersuaded by Martinez's argument that the plaintiffs should have directed their request for documents to WITS, noting that Martinez is the sole manager of WITS and that the Limited Liability Company Act (805 ILCS 180/15-20(a)(1)-(3) (West 2018)) allows for suits by members against fellow members or managers. The court, therefore, ordered Martinez to "immediately [] provide access to the documents contained in the electronic due diligence room" and "all monthly 2019 and 2020 balance sheets, profit & loss statements, statements of cashflow and general ledgers *** and all monthly statements for credit cards and bank accounts belonging to [WITS] for 2019 and 2020."

¶ 18    On August 3, 2020, Martinez filed a notice of interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), asking this court to review both the circuit court's order denying his motion to compel arbitration and the order granting the plaintiffs' motion to compel production.[4]

¶ 19    On appeal, Martinez argues that we should reverse the circuit court's denial of his motion to compel arbitration because the operating agreement contained an arbitration clause and the plaintiffs' claims against him all fall within its scope. He also argues that we should vacate the circuit court's order compelling him to produce certain documents on the grounds that the order is a mandatory preliminary injunction that was improperly granted.

¶ 20    Before turning to the merits, we must first address the plaintiffs' contention that we lack jurisdiction to review the circuit court's July 30, 2020 order compelling Martinez to produce

---

[4] While this matter was pending on appeal, WITS filed a motion to intervene in this court. On October 20, 2020, we denied that motion as untimely.

documents. Martinez's notice of appeal states that he is appealing the order compelling him to produce documents pursuant to Rule 307(a)(1) (Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017)). Rule 307 covers interlocutory appeals as of right and states, pertinently: "An appeal may be taken to the Appellate Court from an interlocutory order of court: (1) granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction[.]" Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017).

¶ 21    The plaintiffs contend that we lack jurisdiction over the July 30, 2020 order compelling production of documents because it is a discovery order, which is a non-final order and not among the orders in Rule 307's list of appealable interlocutory orders. Martinez acknowledges that discovery orders are generally not appealable interlocutory orders, but he argues that the court's July 30, 2020 order is actually a mandatory injunction as it directs him to do a particular thing— produce several categories of WITS' books and records to the plaintiffs—that affects the relationship of the parties' activities apart from the litigation.

¶ 22    In order to determine whether an order is an appealable injunction, we look to its substance, not its form, and our policy is to broadly construe the meaning of the term "injunction." *In re A Minor*, 127 Ill. 2d 247, 260-61 (1989). An injunction is a judicial process requiring a party to do a particular thing, or to refrain from doing a particular thing; that said, not every order with such a requirement is an injunction. *Id.* at 261-62. In particular, ministerial or administrative orders that regulate only the procedural details of litigation cannot be the subject of an interlocutory appeal. *Id.* at 262. Examples of such nonappealable orders include subpoenas, discovery orders, and orders relating to the court's control of its docket. *Short Brothers Construction, Inc. v. Korte & Luitjohan Contractors, Inc.*, 356 Ill. App. 3d 958, 960 (2005). These types of orders can be considered noninjunctive because they do not form a part of the power traditionally reserved to courts of

equity; rather, they are a part of the inherent power possessed by any court to compel the appearance of witnesses, to regulate their testimony, and to control the court's own docket. *Id.* Such orders do not affect the relationship of the parties in their everyday activities apart from the litigation, and this serves to distinguish such orders from traditional forms of injunctive relief. *Id.*

¶ 23    After review, we conclude that the July 30, 2020 order compelling Martinez to produce documents falls into this category of administrative, noninjunctive orders that are not appealable under Supreme Court Rule 307(a)(1). Although the order does require Martinez to do something, in this case produce documents, it does not affect the relationship of the parties in their everyday activities apart from the litigation. The order simply requires Martinez to produce documents that are under his control as the sole manager of WITS. In other words, it is a ministerial or administrative order that regulates only the procedural details of litigation. As such, the court's order was not a grant of an injunction and it is, therefore, not appealable pursuant to Rule 307. Accordingly, we do not have jurisdiction to review the circuit court's July 30, 2020 order compelling Martinez to produce documents.

¶ 24    Martinez's remaining contention on appeal is that the circuit court erred when it denied his motion to compel arbitration because the plaintiffs' claims against him all fall within the scope of the operating agreement's arbitration clause.

¶ 25    The standard of review to be applied to an interlocutory appeal of a denial of a motion to compel arbitration is, like all other appeals, "ultimately dictated by the nature of the issue" presented on appeal. *Brown v. Delfre,* 2012 IL App (2d) 111086, ¶ 10. Here, the question is whether the plaintiffs' allegations fall within the scope of the arbitration agreement, which presents a question of law to be reviewed *de novo*. *Id.* ¶ 11.

¶ 26    "It is a fundamental tenet of Illinois law that the parties are bound to arbitrate only those issues they have clearly agreed to arbitrate." *Fiala v. Bickford Senior Living Group, LLC*, 2015 IL App (2d) 141160. "Where the language of the arbitration agreement is clear, and it is apparent that the dispute sought to be arbitrated falls within the scope of the arbitration clause, the court should decide the arbitrability issue and compel arbitration." *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 445 (1988). Similarly, if it is apparent that the issue sought to be arbitrated is not within the ambit of the arbitration clause, the court should decide the arbitrability issue in favor of the opposing party, because there is no agreement to arbitrate. *Id.* However, "when the language of an arbitration clause is broad and it is unclear whether the subject matter of the dispute falls within the scope of [the] arbitration agreement, the question of substantive arbitrability should initially be decided by the arbitrator." *Id.* at 447-48.

¶ 27    In this case, section 13.4 of the operating agreement states, in pertinent part, that "[o]ther than equitable relief, any controversy or claim arising out of, or relating to, this Operating Agreement, or its breach, shall be settled by arbitration." Section 13.5 of the operating agreement is a clause titled "Equitable Relief" and states the following:

> "As the rights and obligations of the parties are unique and damages cannot be readily measured, irreparable damage would result in the event this Operating Agreement is not specifically enforced. The rights and obligations of the parties shall be enforceable in a court of equity by a decree of specific performance, and appropriate injunctive relief may be applied for and granted in connection therewith. Such remedy and all other remedies provided for in this Operating Agreement shall, however, be cumulative and not

exclusive and shall be available in addition to any other remedies which any party may have under this Operating Agreement or otherwise."

¶ 28 Martinez argues that the plaintiffs' claims against him all fall within the scope of the arbitration clause because they both arise out of, or are related to, his alleged breach of the operating agreement and do not fall within the narrow "equitable relief" exception. Specifically, he contends that the equitable relief exception to the arbitration clause should be read to apply "only to those narrow forms of equitable relief in aid of arbitration, not all claims seeking equitable relief." He also contends that, even if we disagree with his interpretation of equitable relief, we should reverse the circuit court's denial as to counts I and V, which include a prayer for monetary relief. Lastly, he contends that, to the extent that the arbitration provision is unclear, we should vacate the court's order denying his motion to compel arbitration and remand the matter with instructions to refer the matter to the arbitrator to determine the arbitrability issue.

¶ 29 The plaintiffs respond that Martinez's narrow interpretation of "equitable relief" is not supported by the plain language of the arbitration clause, which exempts all "equitable relief." They also argue that their prayer for monetary damages in counts I and V does not "alter their fundamental nature as equitable claims" because a court in equity can award "incidental damages" to make a plaintiff whole.

¶ 30 After review, we conclude that the arbitration clause is unclear as to whether the plaintiffs' claims fall within its scope. When read in isolation, section 13.4 appears to exempt all claims for "equitable relief" from mandatory arbitration. However, the next section of the operating agreement, titled "Equitable Relief," states that "[t]he rights and obligations of the parties shall be enforceable in a court of equity by a decree of specific performance, and appropriate injunctive

relief may be applied for and granted in connection therewith." A reasonable interpretation of this provision, when read in concert with the one preceding it, is that specific performance, and any related injunctive relief, is the only equitable relief that falls outside the scope of the arbitration agreement and may be pursued in the circuit court. Section 13.5 then goes on to state that a decree of specific performance is "cumulative and not exclusive" and "shall be available in addition to any other remedies which any party may have under this Operating Agreement or otherwise." The plaintiffs and the circuit court both interpreted this clause as expressly providing that the equitable relief exempted from arbitration is not limited to specific performance. We also cannot say that this interpretation of the text is unreasonable. Put simply, the operating agreement, when read as a whole, does not make clear the scope of the arbitration provision.

¶ 31 Having so concluded, we also find that, in addition to being unclear, the arbitration provision is also broad in that it provides for arbitration of "any controversy or claim arising out of, or relating to," the operating agreement or its breach. *Donaldson*, 124 Ill. 2d at 445 ("[T]he broadest arbitration clauses typically provide that 'any claim or controversy arising out of this agreement' is to be submitted to arbitration."). As previously stated, "when the language of an arbitration clause is broad and it is unclear whether the subject matter of the dispute falls within the scope of [the] arbitration agreement, the question of substantive arbitrability should initially be decided by the arbitrator." *Id.* at 447-48. That is the case here. Accordingly, because we find that the ultimate issue of arbitrability should be submitted to the arbitrator, we must vacate the circuit court's July 30, 2020 order denying Martinez's motion to compel arbitration. On remand, the circuit court is instructed to refer the matter to the arbitrator for determination of the arbitrability of the plaintiffs' claims.

¶ 32     In sum, we dismiss that portion Martinez's appeal challenging the circuit court's July 30, 2020 order compelling him to produce documents for want of jurisdiction. We vacate the July 30, 2020 order denying Martinez's motion to compel arbitration and remand the matter to the circuit court with instructions.

¶ 33     Dismissed in part; vacated in part; remanded with instructions.